BUTTERWORTH, ATTORNEY GENERAL OF FLOR-
IDA, ET AL. *v.* SMITH

No. 88–1993.   Argued January 16, 1990—Decided March 21, 1990

REHNQUIST, C. J., delivered the opinion for a unanimous Court. SCALIA, J., filed a concurring opinion, *post*, p. 636.

*George L. Waas*, Assistant Attorney General of Florida, argued the cause for petitioners. With him on the briefs were *Robert A. Butterworth*, Attorney General, *pro se*, and *Louis F. Hubener*, Assistant Attorney General.

*Gregg D. Thomas* argued the cause for respondent. With him on the brief were *Steven L. Brannock* and *Julian Clarkson.**

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

A Florida statute, with certain limited exceptions, prohibits a grand jury witness from ever disclosing testimony which he gave before that body. We hold that insofar as the Florida law prohibits a grand jury witness from disclosing his own testimony after the term of the grand jury has ended, it violates the First Amendment to the United States Constitution.

Respondent was a reporter for the Charlotte Herald-News in Charlotte County, Florida. While writing a series of newspaper articles, he obtained information relevant to alleged improprieties committed by the Charlotte County State Attorney's Office and Sheriff's Department. A special prosecutor appointed to investigate the allegations called respondent to testify before a special grand jury which had been convened as part of the investigation. At the time he testified, respondent was warned by the special prosecutor's staff not to reveal his testimony in any manner, and that such revelation could result in a criminal prosecution for violating Fla. Stat. § 905.27. Section 905.27 provides in pertinent part:

---

*Arthur I. Jacobs* filed a brief for the Florida Prosecuting Attorneys Association as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Civil Liberties Union et al. by *M. David Gelfand, Terry E. Allbritton, James K. Green,* and *Steven R. Shapiro;* and for the Florida Press Association et al. by *Richard J. Ovelmen, Gregg D. Thomas,* and *Gary B. Pruitt.*

Briefs of *amici curiae* were filed for the State of Arizona by *Robert K. Corbin,* Attorney General, *Jessica Gifford Funkhouser,* and *Georgia B. Ellexson;* and for the Reporters Committee for Freedom of the Press et al. by *Jane E. Kirtley, W. Terry Maguire, Richard M. Schmidt, Jr., Robert J. Brinkmann, Robert Litt, James Grossberg, J. Laurent Scharff,* and *Bruce Sanford.*

"(1) A grand juror . . . or any other person appearing before the grand jury shall not disclose the testimony of a witness examined before the grand jury . . . except when required by a court to disclose the testimony for the purpose of:

"(a) Ascertaining whether it is consistent with the testimony given by the witness before the court;

"(b) Determining whether the witness is guilty of perjury; or

"(c) Furthering justice.

"(2) It is unlawful for any person knowingly to publish, broadcast, disclose, divulge, or communicate to any other person, or knowingly to cause or permit to be published, broadcast, disclosed, divulged, or communicated to any other person, in any manner whatsoever, any testimony of a witness examined before the grand jury, or the content, gist, or import thereof, except when such testimony is or has been disclosed in a court proceeding." Fla. Stat. § 905.27 (1989).[1]

---

[1] The entire text of § 905.27 provides as follows:

"905.27. Testimony not to be disclosed; exceptions.

"(1) A grand juror, state attorney, assistant state attorney, reporter, stenographer, interpreter, or any other person appearing before the grand jury shall not disclose the testimony of a witness examined before the grand jury or other evidence received by it except when required by a court to disclose the testimony for the purpose of:

"(a) Ascertaining whether it is consistent with the testimony given by the witness before the court;

"(b) Determining whether the witness is guilty of perjury; or

"(c) Furthering justice.

"(2) It is unlawful for any person knowingly to publish, broadcast, disclose, divulge, or communicate to any other person, or knowingly to cause or permit to be published, broadcast, disclosed, divulged, or communicated to any other person, in any manner whatsoever, any testimony of a witness examined before the grand jury, or the content, gist, or import thereof except when such testimony is or has been disclosed in a court proceeding When a court orders the disclosure of such testimony pursuant to subsection (1) for use in a criminal case, it may be disclosed to the prosecutin

After the grand jury terminated its investigation, respondent set out to publish a news story—and perhaps a book—about the subject matter of the investigation, a publication which would include respondent's testimony and experiences in dealing with the grand jury. He sued in the United States District Court for the Middle District of Florida, seeking a declaration that § 905.27 was an unconstitutional abridgment of speech, and an injunction preventing the State from prosecuting him. The District Court granted summary judgment to the State, holding that Florida was entitled to make the judgment that a permanent and total ban on the disclosure of witness testimony was necessary to the proper functioning of the grand jury, and that "this is the exceptional case where a severe infringement on rights under the First Amendment is permissible." 678 F. Supp. 1552, 1561 (1988).

The United States Court of Appeals for the Eleventh Circuit reversed. Recognizing that the "question presented by this appeal . . . is a narrow one," the court held that "the pro-

---

attorney of the court in which such criminal case is pending, and by him to his assistants, legal associates, and employees, and to the defendant and his attorney, and by the latter to his legal associates and employees. When such disclosure is ordered by a court pursuant to subsection (1) for use in a civil case, it may be disclosed to all parties to the case and to their attorneys and by the latter to their legal associates and employees. However, the grand jury testimony afforded such persons by the court can only be used in the defense or prosecution of the civil or criminal case and for no other purpose whatsoever.

"(3) Nothing in this section shall affect the attorney-client relationship. A client shall have the right to communicate to his attorney any testimony given by the client to the grand jury, any matters involving the client discussed in the client's presence before the grand jury, and any evidence involving the client received by or proffered to the grand jury in the client's presence.

"(4) Persons convicted of violating this section shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.083, or by fine not exceeding $5,000, or both.

"(5) A violation of this section shall constitute criminal contempt of court."

visions of section 905.27 prohibiting 'any other person' from disclosing the nature of grand jury testimony are unconstitutional to the extent that they apply to witnesses who speak about their own testimony after the grand jury investigation is terminated." 866 F. 2d 1318, 1319, 1321 (1989). While acknowledging that "the freedom of speech afforded by the first amendment is not absolute," the court concluded that the competing state interests were not sufficiently compelling to warrant the imposition of criminal sanctions on witnesses who revealed the content of their own grand jury testimony. *Id.*, at 1319–1320. In reaching its determination, the court relied principally on our decision in *Landmark Communications, Inc.* v. *Virginia*, 435 U. S. 829 (1978), and the fact that the Federal Rule of Criminal Procedure governing grand jury secrecy imposes no such obligation on grand jury witnesses. 866 F. 2d, at 1320. We granted certiorari, 493 U. S. 807 (1989), and now affirm.[2]

Historically, the grand jury has served an important role in the administration of criminal justice. Although the English forerunner of the modern grand jury served primarily as a prosecutorial and investigative arm of the Crown and was designed to enhance the government's authority, by the 17th century the grand jury had developed an equally important function—to safeguard citizens against an overreaching Crown and unfounded accusations. See 1 S. Beale & W. Bryson, Grand Jury Law and Practice § 1:02, pp. 5–8 (1986). The tradition of secrecy surrounding grand jury proceedings evolved, at least partially, as a means of implementing this latter function by ensuring the impartiality of that body. *Douglas Oil Co. of California* v. *Petrol Stops Northwest*, 441

---

[2] In his complaint, respondent also sought a declaration that he was entitled to divulge his "experience" before the grand jury. Whatever this term might encompass, it is clear that the Court of Appeals limited its holding to a witness' "testimony" before the grand jury. Since respondent has not sought review of any portion of this ruling, we similarly limit our holding to the issue of a witness' grand jury testimony.

U. S. 211, 218–219, n. 9 (1979); Brown, The Witness and Grand Jury Secrecy, 11 Am. J. Crim. Law 169, 170 (1983). Today, grand jury secrecy remains important to safeguard a number of different interests.

"We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of the grand jury proceedings. See, *e. g.*, *United States* v. *Procter & Gamble Co.*, [356 U. S. 677 (1958)]. In particular, we have noted several distinct interests served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Douglas Oil Co.*, *supra*, at 218–219 (footnote omitted).

At the same time, we have recognized that the invocation of grand jury interests is not "some talisman that dissolves all constitutional protections." *United States* v. *Dionisio*, 410 U. S. 1, 11 (1973). Indeed, we have noted that grand juries are expected to "operate within the limits of the First Amendment," as well as the other provisions of the Constitution. *Branzburg* v. *Hayes*, 408 U. S. 665, 708 (1972). See also *Wood* v. *Georgia*, 370 U. S. 375 (1962). We must thus balance respondent's asserted First Amendment rights against Florida's interests in preserving the confidentiality of its grand jury proceedings. See *Landmark Com-*

*munications, supra,* at 838 (balancing State's interest in preserving confidentiality of judicial review proceedings against rights of newspaper reporting on such proceedings); *Branzburg, supra,* at 690–691 (balancing interest in effective grand jury proceedings against burden on reporters' news gathering from requiring disclosure of sources).

The Court examined the tension between First Amendment rights and government investigatory proceedings in *Landmark Communications, supra.* There, a Virginia statute made it a crime to divulge information regarding proceedings before the state judicial review commission. A newspaper publisher was convicted of violating the statute after publishing an article accurately reporting on a pending inquiry by the commission and identifying the state judge under investigation. This Court held that the conviction violated the United States Constitution, concluding "that the publication Virginia seeks to punish under its statute lies near the core of the First Amendment, and the Commonwealth's interests advanced by the imposition of criminal sanctions are insufficient to justify the actual and potential encroachments on freedom of speech and of the press which follow therefrom." *Id.,* at 838. While assuming that the confidentiality of the judicial review proceedings served legitimate state interests, the Court observed that the State had "offered little more than assertion and conjecture to support its claim that without criminal sanctions the objectives of the statutory scheme would be seriously undermined." *Id.,* at 841. The Court also noted that over 40 States with similar judicial review procedures had found it unnecessary to criminalize the type of conduct at issue in order to preserve the integrity of their proceedings. *Ibid.*

Florida argues that our decision in *Seattle Times Co.* v. *Rhinehart,* 467 U. S. 20 (1984), rather than *Landmark,* governs the validity of its prohibition. In *Rhinehart* we held that a protective order prohibiting a newspaper from publishing information which it had obtained through discovery pro-

cedures did not offend the First Amendment. Here, by contrast, we deal only with respondent's right to divulge information of which he was in possession before he testified before the grand jury, and not information which he may have obtained as a result of his participation in the proceedings of the grand jury. In such cases, where a person "lawfully obtains truthful information about a matter of public significance," we have held that "state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *Smith* v. *Daily Mail Publishing Co.*, 443 U. S. 97, 103 (1979); *Florida Star* v. *B. J. F.*, 491 U. S. 524, 533 (1989).

Here Florida seeks to punish the publication of information relating to alleged governmental misconduct—speech which has traditionally been recognized as lying at the core of the First Amendment. See *Landmark*, 435 U. S., at 838; *Wood*, *supra*, at 388–389, 392. To justify such punishment, Florida relies on the interests in preserving grand jury secrecy acknowledged by the Court in *Douglas Oil Co. of California* v. *Petrol Stops Northwest*, 441 U. S. 211 (1979). But we do not believe those interests warrant a permanent ban on the disclosure by a witness of his own testimony once a grand jury has been discharged. Some of these interests are not served at all by the Florida ban on disclosure, and those that are served are not sufficient to sustain the statute.

When an investigation ends, there is no longer a need to keep information from the targeted individual in order to prevent his escape—that individual presumably will have been exonerated, on the one hand, or arrested or otherwise informed of the charges against him, on the other.[3] There is

---

[3] In cases where an arrest is contemplated, there may be a lag time between the issuance of the indictment and the arrest. As a result, the Federal Rules of Criminal Procedure and many States have provided a mechanism for the sealing of indictments pending the indictee's arrest. See Fed. Rule Crim. Proc. 6(e)(4); 1 S. Beale & W. Bryson, Grand Jury Law and Practice § 6.40, pp. 232–233, and nn. 2, 3 (1986). Other States, like Flor-

also no longer a need to prevent the importuning of grand jurors since their deliberations will be over. Similarly, the concern that some witnesses will be deterred from presenting testimony due to fears of retribution is, we think, not advanced by this prohibition; any witness is free *not* to divulge his own testimony, and that part of the Florida statute which prohibits the witness from disclosing the testimony of *another* witness remains enforceable under the ruling of the Court of Appeals.

Florida's interest in preventing the subornation of grand jury witnesses who will later testify at trial is served by the prohibition in question to this extent: if the accused is of a mind to suborn potential witnesses against him, he will have an additional opportunity to learn of the existence of such a witness if that witness chooses to make his grand jury testimony public. But with present day criminal procedure generally requiring the disclosure of witnesses on the part of the State, see, *e. g.*, Fla. Rule Crim. Proc. 3.220(a), the names of these witnesses will be available to the accused sometime before trial in any event. Florida provides substantial criminal

---

ida, have simply prohibited court officers or grand jurors from disclosing the fact that an indictment has been returned before an arrest is made. *Id.*, § 6.40, p. 233, and n. 4. In such cases, there may be instances where the disclosure by a grand jury witness of his own testimony might lead the accused to infer that he had been indicted from the fact that the witness was asked about the accused's conduct. This would seem to be a very speculative possibility, and it did not lead the drafters of the Federal Rules of Criminal Procedure, nor the majority of States, to impose an obligation of secrecy on grand jury witnesses. See *infra*, at 634–635. We similarly conclude that Florida's interest by reason of this hypothesis is not sufficient to justify the State's postinvestigation ban on a witness' disclosure of his own testimony.

Petitioners argue that the State's interest in preventing a target's flight remains valid in cases where the term of a grand jury expires and an investigation is continued with another grand jury. We are not confronted with this situation in the present case and, accordingly, express no opinion on whether a State could prohibit a witness from revealing his testimony under such circumstances.

penalties for both perjury and tampering with witnesses, see Fla. Stat. §§ 837.02, 914.22 (1989), and its courts have subpoena and contempt powers available to bring recalcitrant witnesses to the stand. We think the additional effect of the ban here in question is marginal at best and insufficient to outweigh the First Amendment interest in speech involved.

Florida undoubtedly retains a substantial interest in seeing that "persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Douglas Oil Co.*, *supra*, at 219. And the ban in question does serve that interest to some extent, although it would have the opposite effect if applied to a witness who was himself a target of the grand jury probe and desired to publicize this testimony by way of exonerating himself. But even in those situations where the disclosure by the witness of his own testimony could have the effect of revealing the names of persons who had been targeted by the grand jury but exonerated, our decisions establish that absent exceptional circumstances, reputational interests alone cannot justify the proscription of truthful speech. See *Landmark*, *supra*, at 841–842 ("Our prior cases have firmly established . . . that injury to official reputation is an insufficient reason for repressing speech that would otherwise be free") (quotation omitted); cf. *Florida Star* v. *B. J. F.*, *supra* (First Amendment precluded State from imposing damages for publication of rape victim's name); *Smith* v. *Daily Mail Publishing Co.*, *supra* (State could not constitutionally punish the publication of a juvenile offender's name); *Oklahoma Publishing Co.* v. *Oklahoma County District Court*, 430 U. S. 308 (1977) (State could not constitutionally enjoin the publication of a juvenile offender's name).

We also take note of the fact that neither the drafters of the Federal Rules of Criminal Procedure, nor the drafters of similar rules in the majority of the States, found it necessary to impose an obligation of secrecy on grand jury witnesses with respect to their own testimony to protect reputational

interests or any of the other interests asserted by Florida. Federal Rule of Criminal Procedure 6(e)(2), governing grand jury secrecy, expressly prohibits certain individuals other than witnesses from disclosing "matters occurring before the grand jury," and provides that "[n]o obligation of secrecy may be imposed on any person except in accordance with this rule." The pertinent Advisory Committee Notes on Rule 6(e)(2), 18 U. S. C. App., p. 726, expressly exempt witnesses from the obligation of secrecy, stating that "[t]he seal of secrecy on witnesses seems an unnecessary hardship and may lead to injustice if a witness is not permitted to make a disclosure to counsel or to an associate." Similarly, only 14 States have joined Florida in imposing an obligation of secrecy on grand jury witnesses. Of the remaining 35 States, 21 either explicitly or implicitly exempt witnesses from a general secrecy obligation, and 14 simply remain silent on the issue. See 2 Beale & Bryson, *supra*, n. 3, § 7.05, pp. 20–21, and nn. 18–21.[4] While these practices are not conclusive as to the constitutionality of Florida's rule, they are probative of the weight to be assigned Florida's asserted interests and the extent to which the prohibition in question is necessary to further them.

Against the state interests which we have just evaluated must be placed the impact of Florida's prohibition on respondent's ability to make a truthful public statement. The effect is dramatic: before he is called to testify in front of the grand jury, respondent is possessed of information on matters of admitted public concern about which he was free to speak at will. After giving his testimony, respondent believes he is no longer free to communicate this information since it relates to the "content, gist, or import" of his testimony. The ban extends not merely to the life of the grand jury but into the indefinite future. The potential for abuse of the Florida prohibition, through its employment as a de-

---

[4] But see Tex. Code Crim. Proc. Ann., Art. 20.16 (Vernon 1977) (imposing obligation of secrecy where Beale & Bryson list as silent).

vice to silence those who know of unlawful conduct or irregularities on the part of public officials, is apparent.

We agree with the Court of Appeals that the interests advanced by the portion of the Florida statute struck down are not sufficient to overcome respondent's First Amendment right to make a truthful statement of information he acquired on his own. Its judgment is therefore

*Affirmed.*

JUSTICE SCALIA, concurring.

The Court holds that the Florida statute is unconstitutional "insofar as [it] prohibits a grand jury witness from disclosing his own testimony after the term of the grand jury has ended." *Ante,* at 626. I join the Court's opinion because I interpret that to refer to the information contained within the witness' testimony, but not necessarily to the fact that the witness conveyed that information to the grand jury. I take that to be the meaning of the Court's later clarification that we affirm "respondent's First Amendment right to make a truthful statement of information he acquired on his own." *Ante* this page.

I think there is considerable doubt whether a witness can be prohibited, even while the grand jury is sitting, from making public what he knew before he entered the grand jury room. Quite a different question is presented, however, by a witness' disclosure of the grand jury proceedings, which is knowledge he acquires not "on his own" but only by virtue of being made a witness. And it discloses those proceedings for the witness to make public, not what he knew, but what it was he told the grand jury he knew. There may be quite good reasons why the State would want the latter information—which is in a way information of the State's own creation—to remain confidential even after the term of the grand jury has expired. It helps to assure, for one thing, that grand jurors will not be intimidated in the execution of their duties by the fear of unjustified public criticism to which they cannot respond. To allow them to respond, on the

other hand—by denying that the witness in fact said what he claims to have said, or by pointing out the contradictory testimony of other witnesses—would have its own adverse effects, including the subjection of grand jurors to a degree of press attention and public prominence that might in the long run deter citizens from fearless performance of their grand jury service.   I do not say that these state interests are necessarily sufficient, but only that they are not presented by the narrow question we decide today.