659 So.2d 316 (1994)
JACKSONVILLE TELEVISION, INC., d/b/a WJKS/Channel 17, Petitioner,
v.
FLORIDA DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES, M.B., the mother, R.B. the father, Randy Richardson, Foster Care Counselor, Cynthia Dunbar, Guardian ad Litem, Joseph M. Ripley, Jr., Representative Stephen Wise, and the Florida Times union, Respondents.
No. 94-3376.
District Court of Appeal of Florida, First District.
December 29, 1994.
Gregg D. Thomas and Scott D. Makar of Holland & Knight, Jacksonville, for petitioner.
Deborah A. Schroth and Michael R. Yokan, Jacksonville Area Legal Aid, Inc., Jacksonville, for respondent foster parents.
Roger L.D. Williams, Asst. District Legal Counsel, Jacksonville, for respondent HRS.
Cynthia B. Glazier, Staff Atty., Guardian ad Litem Program, Jacksonville, for respondent Guardian ad Litem.
PER CURIAM.
Jacksonville Television, Inc. petitions this court for a writ of certiorari to review an order of the circuit court which prohibited the airing of a video interview without certain restrictions. Because the challenged portion of the order is an impermissible prior restraint, we grant the petition and quash the order in part.
M.A.B., J.B., and J.M.B. are children who were previously adjudicated dependent by the Circuit Court in and for Duval County. On September 26, 1994, Circuit Judge Karen K. Cole issued an order which set a hearing for the following day on whether a restrictive and/or closure order should issue in the cause. Copies of the order were provided to the parents and their counsel, the Department of Health and Rehabilitative Services (HRS), the Guardian ad Litem, the Florida Times Union newspaper, and Jacksonville Television, Inc. The style of the order listed *317 the children by their complete names rather than by their initials. The hearing was held as scheduled and Judge Cole was informed that reporters employed by the petitioner had videotaped an interview with the mother of the children earlier in the day. At the hearing Judge Cole ordered that the interview not be aired unless the mother's face was not displayed. In other words, petitioner can air only the audio portions of the interview or must alter the video image of the mother in such a way that the image could not be recognized if the video portion of the tape is broadcast. On the following day a written order was entered which memorialized this ruling and which provided interested persons or entities an opportunity to present the court with written memoranda of law. Such memoranda were filed by Jacksonville Television, Inc. and others and on September 30 Judge Cole converted her temporary order to a permanent order. She found that the need to obscure identifying faces is manifestly overwhelming for the reasons set forth in her prior order. There it was noted that this case had become newsworthy, at least in part, because of certain inquiries made by a state legislator into the role of HRS in the dispute. Judge Cole reviewed psychiatric reports regarding the children which indicated that each had suffered negative consequences as a result of the representative's involvement in the case. Judge Cole also conducted in camera interviews with the children and found it "clear and convincing that the involvement of nonparties, even if prompted by legitimate reasons and out of genuine concern, is seriously detrimental to the psychological and physical well-being of at least the two older children and probably the youngest child as well." She determined that the obscuring of the mother's face while otherwise permitting the interview to air was the least intrusive means under the circumstances to protect the privacy rights of the children.
Jacksonville Television, Inc. argues as follows: The order which it received regarding the hearing contained the names of the children and only mentioned the possibility of closure or restrictions on the hearing. Therefore, the interview taped with the mother was not contrary to any statute or court order. Because the order is a prior restraint, it bears a heavy presumption of unconstitutionality. Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). Information in the hands of the press may not be prohibited from publication unless the need for secrecy is manifestly overwhelming. Florida Publishing Co. v. Brooke, 576 So.2d 842 (Fla. 1st DCA 1991). No federal or Florida appellate court has held that a child's interest in privacy outweighs the constitutional right of the press and public to speak freely on matters that became known before closure. Retroactive measures cannot change the fact that information was already in the public domain and that publicity has already occurred. And finally, the findings of the trial court, even if taken as true, fall short of the "manifestly overwhelming" standard that must be met to overcome the heavy presumption of unconstitutionality of a prior restraint.
The foster parents of the children and HRS oppose the petition for writ of certiorari and argue as follows: The trial court properly balanced First Amendment interests with the privacy interests of the children to fashion a remedy. The children in this proceeding are innocent victims and their rights should be given greater protection than those of juveniles accused of criminal activity. Therefore, Oklahoma Publishing v. District Court In and For Oklahoma County, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977) and Butterworth v. Smith, 494 U.S. 624, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990) are distinguishable. The inadvertent disclosure of the children's names does not preclude the restrictive order of the trial court, and the trial court's remedy was properly narrow in scope to accomplish the legitimate purpose of protecting the privacy of these children.
We conclude that the portion of the trial court's order which restricts the petitioner's right to broadcast the interview is an unconstitutional prior restraint. The scrutiny to be applied to a prior restraint is, if anything, more stringent than that applied in reviewing a criminal sanction for publication. Smith v. Daily Mail Publishing Co., 443 U.S. 97, 102, 99 S.Ct. 2667, 2670, 61 L.Ed.2d *318 399, 404 (1979). In The Florida Star v. B.J.F., 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989) a rape victim brought a civil action for damages against a newspaper which published her name. She established negligence per se by relying upon the defendant's violation of a Florida statute which made it a misdemeanor to publish a rape victim's name. Agreeing with the newspaper that this ran afoul of First Amendment principles, the court examined its precedents and noted that the first inquiry must be whether the media lawfully obtained the information. Here, the trial court's inadvertent publication of the full names of the children on its order led petitioner's reporters to identify and contact the mother. Further, the videotaping of the interview violated no law or valid court order. The fact that here, as in B.J.F., the original dissemination of the information by a government entity was unintentional does not undermine the conclusion that the information was lawfully obtained. The second inquiry is whether the action of the trial court served "a need to further a state interest of the highest order." 491 U.S. at 537, 109 S.Ct. at 2611. We do not discount the importance of the state's interest in protecting the interests of these children. See §§ 39.408(2)(c) and 39.411(3), Fla. Stat. Here, the trial court made findings of the effect on the children of the involvement in the case of a state representative but the link between that involvement and the broadcast of the interview with the mother is simply too tenuous. These findings therefore are not a sufficient basis to support a conclusion that the need for the prior restraint is "manifestly overwhelming." Accordingly, we grant the petition and quash that portion of the order which limits petitioner's right to broadcast the interview.
ALLEN, WEBSTER and DAVIS, JJ., concur.