**HOWARD PUBLICATIONS, INC., d/b/a The Times, Appellant–Intervenor,**

v.

**LAKE MICHIGAN CHARTERS, LTD., Intervenor–Objecting Party.**

**CITY OF HAMMOND, INDIANA, a Municipal Corporation, Plaintiff Below,**

v.

**GREAT LAKES INLAND MARINA, INC., Marina Entertainment Complex, Inc., Mercantile National Bank of Indiana, as Trustee under Trust Agreement No. 4594, dated January 9, 1985; Mercantile National Bank of Indiana, as Trustee under Trust Agreement No. 4970, dated May 28, 1987; AXG Corp. Marianna Potter; Auditor of Lake County, Indiana; and Treasurer of Lake County, Indiana, Defendants Below.**

No. 45A03–9409–CV–326.

Court of Appeals of Indiana, Third District.

April 18, 1995.

Frederick F. Eichhorn, Jr., David C. Jensen, Gregory A. Crisman, Alyssa Forman Stamatakos, Eichhorn, Eichhorn & Link, Hammond, for appellant.

Alan H. Lobley, Ice Miller Donadio & Ryan, Indianapolis, for appellee.

## OPINION

GARRARD, Judge.

Howard Publications, Inc. d/b/a *The Times* (hereinafter referred to as The Times) con-

tends that the Lake Superior Court's protective orders enjoining publication of certain information disclosed to the court during discovery are unconstitutional prior restraints. We uphold the constitutionality of protective orders issued against third parties in the discovery process and additionally determine that a court may properly prohibit disclosure of materials expressly furnished for *in camera* proceedings by the court.

## FACTS

On April 5, 1994, the City of Hammond, Indiana filed its complaint as a municipal corporation to condemn property for a public right of way to the Marina on Lake Michigan. The complaint named various defendants having interests in the property, including the property owner, Great Lakes Inland Marina, Inc.. Great Lakes Inland Marina sought a change of venue from the judge, and Thomas W. Webber, Sr. of the Porter Superior Court qualified as special judge on June 16, 1994. The parties began discovery. Pursuant to court order, non-party Lake Michigan Charters, Ltd. (hereinafter LMC) tendered certain documents to the court in a sealed envelope labeled "Privileged documents for in camera review." These documents are the subject of this appeal.

The Times had been investigating the Hammond Marina and efforts to acquire all or a portion of the Marina as a site for development of riverboat gambling activities. On July 26, 1994 Debra Gruszecki, a staff writer employed by The Times, entered Judge Webber's office and requested an opportunity to review the court file at issue. Judge Webber's secretary furnished Gruszecki with the entire file, which was approximately seven to eight inches thick. Among the documents in the file Gruszecki found the envelope from LMC bearing the "privileged documents" label. It is asserted the envelope was unsealed and its contents were readily accessible to her. Gruszecki returned to Judge Webber's office the following day, obtained permission from the secretary to photocopy documents in the file, and photocopied the documents submitted by LMC for *in camera* review.

On August 13, 1994, Judge Webber issued an order containing the following pertinent language:

It has come to the attention of the Court that certain sealed confidential documents that were before the Court have been unauthorizedly examined and copied from the Court's file by a representative of Howard Publications d/b/a The Times. These documents were filed with the Court by Lake Michigan Charters, Ltd. on July 18, 1994 in a sealed envelope entitled "Lake Michigan Charters' Tender to Court of Privileged Documents For In Camera Review" ... On the Court's own motion,

IT IS THEREFORE ORDERED that Howard Publications d/b/a The Times is restrained from releasing to the public, or any other person, any of the documents or their contents which are identified in Exhibit A attached hereto, until further order of the Court;

IT IS FURTHER ORDERED that releasing to the public in the foregoing paragraph expressly includes use in any newspaper publication. (R. 115–116).

On August 19, 1994 the court held a hearing and determined that its protective order should remain in effect. (R. 210–211). LMC then moved for a protective order under Trial Rule 26(C), asserting that (1) the materials were privileged attorney work product, or (2) the materials were irrelevant, immaterial, and not likely to lead to relevant admissible evidence. The court examined the materials submitted by LMC and granted LMC's motion on August 25, 1994. (R. 221–222). This is an interlocutory appeal taken pursuant to Ind.Appellate Rule 4(B)(3) challenging the protective order and its effect on the Times.

## ISSUES

I. Whether a protective order limiting a third party's use of information gleaned from court records of discovery violates the First Amendment.

II. Whether a protective order issued after a third party gained access to the protected information is effective?

## DISCUSSION AND DECISION

### I.

The United States Supreme Court has held that a protective order prohibiting a newspaper from publishing information which it obtained through discovery procedures did not offend the First Amendment. *Seattle Times Co., et al. v. Rhinehart, et al.,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). In *Seattle Times,* the spiritual leader of a religious group brought an action against a newspaper alleging defamation and invasion of privacy. During the course of extensive disclosure, the trial court granted an order to protect the identities of the group's donors and members. The Court upheld the protective order, finding that it furthered the important governmental interest of preventing abuse of the pretrial discovery process. *Id.* at 34–36, 104 S.Ct. at 2208–09. Furthermore, the Court found the pretrial discovery context to be significant, stating that "continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations." *Id.* at 32, 104 S.Ct. at 2207.

The case at bar differs factually from *Seattle Times* in that here the newspaper was not a party to the initial lawsuit. Rather than being provided with the information as a party during the discovery process, The Times obtained the information by investigating the court's file. Thus, the issue before this court is whether a protective order enjoining the release of discovery material by a non-party who gleaned the information from the court's file violates the First Amendment. We hold that it does not.

Appellant argues that LMC's privacy interest in the tendered materials is insufficient to overcome its First Amendment rights. A long line of cases cited by appellant demonstrates other important state interests that have succumbed to the power of the First Amendment. *See, e.g., New York Times v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (publication of Pentagon Papers, alleged to have been stolen from Department of Defense, could not be enjoined despite a claim of national security); *Minneapolis Star & Tribune Co.*

*v. Minnesota Commissioner of Revenue,* 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983) (rejecting a state's interest in raising revenue); *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979) (finding unjustified a state's interest in preserving the anonymity of its juvenile offenders). If the competing interest to free publication was merely the privacy interest of LMC, as The Times argues, we might agree with the application of these authorities. It is not, however. Instead, we perceive the competing interest of the state to be the integrity of the judicial system itself. The efficacy of that system and its discovery processes depend very largely upon the public's trust and voluntary willingness to comply.

Contrary to appellant's position, the United States Supreme Court has determined that "judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates [sic] the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context." *Seattle Times, Co.,* 467 U.S. at 34, 104 S.Ct. at 2208. The Court relied upon the fact that pretrial discovery is not a public component of a civil trial. Instead, discovery is generally conducted in private. *Id.* at 33, 104 S.Ct. at 2208. Moreover, material uncovered during discovery is ordinarily not within the scope of press access until it has been admitted into the record. *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 897–8 (7th Cir.1994). Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information. *Seattle Times, Co.,* 467 U.S. at 33, 104 S.Ct. at 2208. The fact that the information obtained by The Times reporter was compiled and available in the court's file only because of a discovery order is the distinguishing factor in this case.

The important functions served by protective orders exist regardless of whether the would-be publisher is a party or non-party. Confidentiality while information is being gathered not only protects trade secrets but

also promotes disclosure to the tribunal. *Matter of Krynicki*, 983 F.2d 74, 75 (7th Cir.1992). Persons having arguable grounds to resist discovery are more likely to turn over information if they know the audience is limited and the court will entertain arguments focused on vital knowledge that a party wants to use later. *Id.* Third parties such as LMC would likely resist turning over sensitive documents to the court in the future if confidentiality cannot be assured. An unwillingness to comply with discovery orders would result in burdensome expense and delay from additional court hearings.

■ More importantly, protective orders further a substantial governmental interest in preventing abuse of the discovery process. *Seattle Times Co.*, 467 U.S. at 35, 104 S.Ct. at 2209. Through discovery a trial court can coerce production of information by parties as well as non-parties. This information may not only be irrelevant, it also may be damaging to reputation and privacy if publicly revealed. *Id.* The integrity of the judicial system depends upon its ability to protect the confidentiality of information it can order disclosed.[1] Therefore, we hold that an order granted under Rule 26(c) protects the discovered information regardless of whether the would-be publishers are parties or non-parties to the initial litigation, so long as they obtained the information via the discovery process.[2] *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1052–53, 111 S.Ct. 2720, 2733, 115 L.Ed.2d 888 (1991) (stating that petitioner could not have learned what he revealed at the press conference through the discovery process; thus the rationale of *Seattle Times* does not apply)[3]; *Butterworth*

*v. Smith*, 494 U.S. 624, 631–632, 110 S.Ct. 1376, 1380–81, 108 L.Ed.2d 572 (1990) (finding that *Seattle Times* did not limit respondent's right to divulge information of which he was in possession before he testified before the grand jury).

■ Next we must determine whether the protective orders entered against The Times are consistent with the First Amendment.[4] In *Seattle Times*, the Court did not hold that a discovery protective order could never offend the First Amendment. Instead, it held that the Constitution is not offended if three criteria are met: (1) there is a showing of good cause as required by Rule 26(c), (2) the restriction is limited to the pretrial civil discovery context, and (3) the order does not restrict the dissemination of information gained from other sources. *Seattle Times Co.*, 467 U.S. at 37, 104 S.Ct. at 2209–10. It appears that good cause was established and, indeed, The Times does not challenge cause. The second requirement is met since the order relates only to the *in camera* documents. The third requirement is also met. The order prohibits releasing the documents or their contents. We read the second part of this prohibition as restricted to information gained from (contained in) the documents. It does not purport to restrict the Times for disclosing information it may gain from other sources. The order is not violative of the First Amendment.

■ The second issue we address is whether a protective order must be issued before a third party gains access to the discovery material to be effective. Appellant's argument that a protective order must pre-

---

1. Protective orders are really about the timing of disclosure. Information that is used at trial or otherwise becomes the basis of the court's decision enters the public record. Secrecy persists only if the court does not use the information to reach a decision on the merits. *Matter of Krynicki*, 983 F.2d 74, 75–76 (7th Cir.1992).

2. The order protects information gleaned through discovery. It does not matter whether the envelope was sealed when the reporter found it, nor does it matter whether the envelope was clearly marked as confidential.

3. The United States Supreme Court also said that *Seattle Times* would prohibit the release of dis-

covery information by the attorney as well as the client. *Gentile*, 501 U.S. at 1052, 111 S.Ct. at 2733.

4. Although the Court's opinion does not specifically identify the appropriate test for a protective order, we agree with the First Circuit's interpretation of *Seattle Times*. It read the Court's opinion as applying heightened scrutiny to the practice of restraining a litigant's right to disseminate discovery information, not to any particular application of Rule 26(c). *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7, n. 2 (1st Cir.1986). Thus the correct test to be applied is the good cause inquiry found in Rule 26(c). *Id.* at 7.

cede disclosure to the press is its only attempt to distinguish *Seattle Times*. Yet appellant cites no authority for this proposition, and we decline to so hold. The trial court must be afforded the power to protect the discovery procedure by a properly entered protective order. To preserve the integrity of the judicial system, a protective order must be effective whenever entered.

## CONCLUSION

We hold that protective orders may limit a third party's use of information acquired from court records of discovery without violating the First Amendment, and the particular order entered in this case is valid in its scope. Furthermore, we find that such a protective order becomes effective when issued even though a third party secured access to the discovery materials before the order was entered.

Affirmed.

RUCKER, J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

The majority adopts the language of the Court's decision in *Seattle Times, Co. v. Rhinehart* (1984), 467 U.S. 20, 104 S.Ct. 2199, by determining that a protective order will not offend the First Amendment of the Constitution if the following elements are met: there is a showing of good cause as required by Ind.Trial Rule 26(c), which is limited to the context of pretrial discovery, and does not restrict the dissemination of the information if gained from other sources. See op. at 133 (citing *Seattle Times, supra,* at 37, 104 S.Ct. at 2209–10). Thus, the majority eliminates any First Amendment inquiry. The analysis of the Majority is incomplete.

In *Seattle Times*, the Court recognized that pretrial protective orders, designed to limit the dissemination of information gained through the civil discovery process, are subject to scrutiny under the First Amendment. *Seattle Times, supra,* at 37, 104 S.Ct. at 2209 (Brennan, J. concurring). Before approving a protective order, a court must consider:

whether the practice in question furthers an important or substantial governmental interest unrelated to the suppression of expression and whether the limitation of the First Amendment freedoms is no greater than is necessary or essential to the protection of the particular governmental interest involved.

*Id.* at 32 and 37, 104 S.Ct. at 2207 and 2210.

The majority ignores the Court's directive in *Seattle Times* and essentially concludes that if the party requesting the suppression of pretrial discovery material makes a sufficient showing of good cause as required by Ind.Trial Rule 26(c), no First Amendment inquiry is necessary. See op. at 133 (citing *Seattle Times, supra,* at 37, 104 S.Ct. at 2209–10).

However, the majority does not fully examine whether the third party, LMC, made a showing of good cause and summarily concludes "[i]t appears that good cause was established and, The Times does not challenge cause." Op. at 133. This conclusory statement fails to analyze whether in fact LMC made this critical showing of good cause which would justify the issuance of the protective order.

Because the majority relies upon the showing of good cause to justify the issuance of a protective order and to satisfy the First Amendment, LMC must establish good cause before the protective order may be entered. Such has not been established here. I would therefore recommend that this cause be remanded in order for the parties to address the issue of good cause.

For these reasons, I dissent.