John DOE I, John Doe II, American Civil Liberties Union, American Civil Liberties Union Foundation, Plaintiffs–Appellees,

v.

Alberto GONZALES (In Official Capacity as Attorney General), Robert S. Mueller III (In Official Capacity as Director of the Federal Bureau of Investigation), Marion E. Bowman (In Official Capacity as Senior Counsel of the Federal Bureau of Investigation), John Roe, Defendants–Appellants.

Docket Nos. 05–0570–CV(L), 05–4896–CV(CON).

United States Court of Appeals, Second Circuit.

Argued: Nov. 2, 2005.

Decided: May 23, 2006.

Douglas N. Letter (Robert D. McCallum, Jr., Acting Deputy Attorney General, Peter D. Keisler, Assistant Attorney General, Gregory G. Katsas, Deputy Assistant Attorney General, Scott R. McIntosh, Department of Justice Attorney, Washington DC; David N. Kelly, United States Attorney for the Southern District of New York, Jeffrey Oestericher, Assistant United States Attorney, New York, NY; Kevin J. O'Connor, United States Attorney for the District of Connecticut, William Collier, Lisa E. Perkins, Assistant U.S. Attorneys, Hartford, CT, on the brief) Department of Justice, Civil Division, Appellate Section, Washington DC, for Defendants–Appellants.

Jameel Jaffer & Ann Beeson (Melissa Goodman, American Civil Liberties Union Foundation, New York, NY; Arthur N. Eisenberg, New York Civil Liberties Union Foundation, New York, NY; Annette M. Lamoreaux, American Civil Liberties Union of Connecticut Foundation, Hartford, CT, on the brief) American Civil Liberties Union Foundation, New York, NY, for Plaintiffs–Appellees.

Bettina B. Plevan (Stephen L. Kass, Samantha Klein, Ethan I. Strell, Carter Ledyard & Milburn LLP, New York, NY, Sarah Netburn, Emery Celli Brinckerhoff & Abady LLP, New York, NY, of counsel), Association of the Bar of the City of New York, New York, NY, for Amicus Curiae Association of the Bar of the City of New York in support of Plaintiffs–Appellees.

Daniel Mach & Theresa A. Chmara (Brian Hauck, Amy L. Tenney, on the brief) Jenner & Block LLP, Washington DC, for Amici Curiae American Association of University Professors, American Booksellers Foundation for Free Expression, American Library Association, Association of American Publishers, Freedom to Read Foundation, and Pen American Center in support of Plaintiffs–Appellees.

Meredith Fuchs (Marc Rotenberg, Marcia Hofmann, Electronic Privacy Information Center, Washington DC, on the brief) National Security Archive, Washington, DC, for Amici Curiae National Security Archive, Project on Government Secrecy of the Federation of American Scientists, Electronic Privacy Information Center, and National Whistleblower Center in support of Plaintiffs–Appellees.

Lee Tien (Kurt B. Opsahl, Kevin S. Bankston, on the brief) Electronic Frontier Foundation, San Francisco, CA, for Amicus Curiae Electronic Frontier Foundation in support of Plaintiffs–Appellees.

Before CARDAMONE, McLAUGHLIN, B.D. PARKER, Circuit Judges.

Judge CARDAMONE concurs in the judgment of the Court, and files a separate concurring opinion.

PER CURIAM.

This consolidated appeal calls on us to consider 18 U.S.C. § 2709, a statute that governs the Federal Bureau of Investigation's (FBI) issuance of National Security Letters (NSLs) to wire or electronic communication service providers. An NSL is an administrative subpoena that allows the

FBI to gain access to, *inter alia,* "subscriber information . . . or electronic communication transactional records" held by internet service providers,[1] when this information is "relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities. . . ." 18 U.S.C. §§ 2709(a) & (b)(2). John Does I and II are internet service providers who received NSLs and commenced proceedings in the Southern District of New York and the District of Connecticut (respectively) challenging the constitutionality of § 2709.

Section 2709 was originally enacted as part of Title II of the Electronic Communication Privacy Act of 1986 ("ECPA"), Pub.L. No. 99–508, § 201, 100 Stat. 1848, 1867–68 (1986), and was amended in 1993 and 1996. *See generally* FBI Access to Telephone Records, Pub.L. No. 103–142, § 1, 107 Stat. 1491, 1491–92 (1993); Intelligence Authorization Act for Fiscal Year 1997, Pub.L. No. 104–293, § 601(a), 110 Stat. 3461, 3469 (1996). Shortly after the terrorist attacks of September 11, 2001, however, Congress again amended § 2709 by means of Title V, Section 505 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA Patriot Act"), Pub.L. 107–56, 115 Stat. 272, 365 (Oct. 26, 2001).

Both the Southern District of New York in *Doe v. Ashcroft ("Doe I"),* 334 F.Supp.2d 471 (S.D.N.Y.2004), and the District of Connecticut in *Doe v. Gonzales ("Doe II"),* 386 F.Supp.2d 66 (D.Conn. 2005), ruled on the constitutionality of § 2709 (as amended by the USA Patriot Act). However, while this appeal was pending, Congress passed the USA Patriot Improvement and Reauthorization Act of 2005, Pub.L. No. 109–177, 120 Stat. 192 (Mar. 9, 2006) (the "Reauthorization Act" or the "Act"). This Act dramatically altered § 2709, and added several new procedures codified at 18 U.S.C. § 3511, which now govern judicial review of the FBI's requests for information through NSLs. In light of the significant changes to § 2709 in the Reauthorization Act, this Court issued an order on March 15, 2006 requesting supplemental letter briefs from the parties on the impact of the Reauthorization Act on this case.

Having reviewed the Government's Letter Brief dated March 29, 2006 ("Gov't Ltr. Br."), the Plaintiffs' Letter Brief dated April 7, 2006 ("Pls.Ltr.Br."), and the Government's Reply Letter Brief dated April 18, 2006 ("Gov't Reply Ltr. Br."), we dispose of *Doe I* and *Doe II* as follows.

## I. *Doe I,* No. 05–0570

In *Doe I,* on cross-motions for summary judgment, the Southern District of New York held that the then-applicable version of § 2709 was unconstitutional as applied to John Doe I under the Fourth Amendment because it was denied pre-enforcement judicial review. *Doe I,* 334 F.Supp.2d at 494–511. The Southern District of New York also held that the permanent nondisclosure requirement (also known as the "gag order" provision) of the then-applicable version of § 2709(c) was unconstitutional on its face under the First Amendment because it operated as a content-based prior restraint on speech that was not sufficiently narrowly tailored to achieve a compelling governmental interest. *Doe I,* 334 F.Supp.2d at 511–26.

 The Reauthorization Act has substantially shifted the legal footing on which *Doe I* stands. The parties agree that the Reauthorization Act's provisions apply ret-

---

**1.** An internet service provider, commonly referred to as an "ISP", is a company that, *inter alia,* furnishes corporations and individual consumers with access to the internet.

roactively to NSLs issued before the Reauthorization Act. *See* Gov't Ltr. Br. at 2–3; Pls. Ltr. Br. at 1. Because the Reauthorization Act added provisions permitting NSL recipients to challenge the issuance of NSLs in court, *see* 18 U.S.C. § 3511(a), John Doe I no longer presses Fourth Amendment claims on this appeal, *see* Pls. Ltr. Br. at 2 n. 2; *see also* Gov't Reply Ltr. Br. at 1. Therefore, we deem them abandoned, rendering this portion of the appeal moot. Accordingly, we vacate the Fourth Amendment portion of the Southern District of New York Opinion in *Doe I. See Russman v. Bd. of Educ.*, 260 F.3d 114, 122 (2d Cir.2001) ("In general, where the appellee has caused the case to become moot, we vacate the district court's judgment to prevent the appellee from insulating a favorable decision from appellate review.").

■ The new § 2709(c) now explicitly allows an NSL recipient to talk with an attorney "to obtain legal advice or legal assistance with respect to the request." 18 U.S.C. § 2709(c)(1); *see* Gov't Ltr. Br. at 2. The Reauthorization Act also added procedures for the judicial review of the terms and conditions of nondisclosure imposed on a recipient of an NSL. *See* 18 U.S.C. § 3511(b). However, Plaintiffs argue that the revised version of § 2709(c), as amended and supplemented by the Reauthorization Act, still violates John Doe I's First Amendment rights. *See* Pls. Ltr. Br. at 2–4. The Government responds that the Reauthorization Act and the new procedures found in 18 U.S.C. § 3511 solve the purported First Amendment problems that the nondisclosure provisions of the prior version of § 2709(c) had raised. *See* Gov't Ltr. Br. at 3–4.

■ We do not believe that it would be prudent to resolve these novel First Amendment issues as a part of this appeal. Therefore, we also vacate the First Amendment portion of *Doe I*, and we remand this case so that the Southern District of New York, in the first instance, can address the First Amendment issues presented by the revised version of § 2709(c), and the Reauthorization Act's new procedures and standards for judicial review found at 18 U.S.C. § 3511. On remand, the district court will, as appropriate, have the opportunity to receive amended pleadings, request new briefs, conduct oral argument, and, in due course, furnish its views on the constitutionality of the revised version of § 2709(c) and the Reauthorization Act. *See, e.g., Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 482, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) ("[I]n instances where [ ] mootness is attributable to a change in the legal framework governing the case, and where the plaintiff may have some residual claim under the new framework that was understandably not asserted previously, our practice is to vacate the judgment and remand for further proceedings in which the parties may, if necessary, amend their pleadings or develop the record more fully.").[2]

## II. *Gonzales v. Doe II*, No. 05–4896

In *Doe II*, on a motion for preliminary injunction, the District of Connecticut enjoined the Government from enforcing the gag order imposed on John Doe II under § 2709(c) insofar as it prevented John Doe II from revealing its identity as a recipient of an NSL. In granting its motion for a preliminary injunction, the District of Connecticut held that John Doe II had demon-

---

**2.** Because the Reauthorization Act fundamentally changed the nature of the First Amendment claims in this case, we do not believe that this panel's retention of jurisdiction by

means of a *Jacobson* remand would be appropriate here. *See generally United States v. Jacobson*, 15 F.3d 19, 21–22 (2d Cir.1994).

strated irreparable harm from the suppression of its speech, and a likelihood of success on the merits that § 2709(c) violated John Doe II's First Amendment rights as a content-based, prior restraint on speech. *See Doe II,* 386 F.Supp.2d at 72–82.

■ In light of the Reauthorization Act, the Government now asserts that John Doe II should move in the District of Connecticut, under the new procedures in 18 U.S.C. § 3511(b), for a modification of the terms of its § 2709(c) non-disclosure requirements so that it can reveal its identity. *See* Gov't Ltr. Br. at 5. The Government has represented to us that it will not oppose such a motion. *See id.* The Government also contends that once the District of Connecticut allows disclosure of John Doe II's identity, this appeal will become moot. The Government argues that, at that point, we should then dismiss the appeal in *Doe II,* and vacate the District of Connecticut's preliminary injunction opinion rather than leave it unreviewed on appeal. *See id.* (citing *United States v. Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950)). The Government's proposals for the handling of *Doe II* are flawed for two reasons.

First, the District of Connecticut cannot entertain a motion under the Reauthorization Act and 18 U.S.C. § 3511(b) before this Court issues its mandate. In other words, we must act first and return this case to the District of Connecticut, which could then entertain motions from John Doe II, if necessary or appropriate. *See Ostrer v. United States,* 584 F.2d 594, 598 (2d Cir.1978) ("The effect of the mandate is to bring the proceedings in a case on appeal in our Court to a close and to remove it from the jurisdiction of this Court, returning it to the forum whence it came."); *see also United States v. Rivera,* 844 F.2d 916, 921 (2d Cir.1988) ("Simply put, jurisdiction follows the mandate.").

■ Second, it is the government's burden, "as the party seeking relief from the status quo of the [ ] judgment [below], to demonstrate … equitable entitlement to the extraordinary remedy of vacatur." *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 26, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). In considering whether or not vacatur of a lower court opinion is warranted when a case becomes moot on appeal, we look to the "the nature and character of the conditions which have caused the case to become moot." *Id.* at 24, 115 S.Ct. 386 (internal quotation marks omitted). If the case has become moot due to circumstances unattributable to any of the parties or from the unilateral action of the party who prevailed in the district court, vacatur is usually warranted. *See id.* at 23, 115 S.Ct. 386. However, when "the party seeking relief from the judgment below caused the mootness by voluntary action," *id.* at 24, 115 S.Ct. 386, vacatur is usually not warranted.

Given the concession of the Government (the Appellant in both *Doe I* and *Doe I)* on appeal that John Doe II can disclose its identity, the Government no longer opposes the relief granted by the District of Connecticut in its preliminary injunction ruling. Thus, the Government has effectively rendered this appeal moot by its own voluntary actions. *See* Gov't Ltr. Br. at 5. This voluntary forfeiture of review means that the Government has failed to meet its burden of demonstrating that it is entitled to vacatur of the District of Connecticut's preliminary injunction ruling. *See Russman,* 260 F.3d at 122.

Even though the Government's concession on appeal that it will not oppose the revelation of John Doe II's identity is dispositive, we nonetheless feel obligated to

address the Government's concerns about leaving the District of Connecticut's "unreviewed ruling of unconstitutionality on the books." Gov't Ltr. Br. at 5. As the Supreme Court explained in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, supra,*

[j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur. Congress has prescribed a primary route, by appeal as of right and certiorari, through which parties may seek relief from the legal consequences of judicial judgments. To allow a party who steps off the statutory path to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would—quite apart from any considerations of fairness to the parties—disturb the orderly operation of the federal judicial system.

513 U.S. at 26–27, 115 S.Ct. 386 (internal quotation marks and citations omitted).

Therefore, in light of the Government's concession on appeal that John Doe II can reveal its identity—as was required by the District of Connecticut's preliminary injunction ruling—a simple dismissal of *Doe II* on mootness grounds is appropriate.

## CONCLUSION

For the forgoing reasons, *Gonzales v. Doe I,* No. 05–0570, is hereby VACATED, and the case REMANDED for further proceedings on whether the new version of 18 U.S.C. § 2709(c), as revised and supplemented by the Reauthorization Act and 18 U.S.C. § 3511, violates the First Amend-

ment either on its face or as applied to John Doe I. *Gonzales v. Doe II,* No. 05–4896, is hereby DISMISSED as moot. The mandate for these two consolidated cases shall issue forthwith.

CARDAMONE, Circuit Judge, Concurring:

I concur in the judgment of the court. I write separately to address an argument the government continues to press notwithstanding the recent amendments to 18 U.S.C. § 2709(c). The question previously before us was whether subsection (c), which imposed a permanent ban on speech, ran afoul of the First Amendment. The Reauthorization Act has altered the functioning and perhaps the scope of § 2709(c)'s gag provision, and that is why we are remanding the New York case *(Doe I)* for further proceedings and dismissing the Connecticut case *(Doe II).* Yet, in its recent letter briefings to the panel, the government perseveres, insisting that a permanent ban on speech is permissible under the First Amendment. This issue warrants comment, especially because I suspect that a perpetual gag on citizen speech of the type advocated so strenuously by the government may likely be unconstitutional.

Prior to the passage of the Reauthorization Act the government sought enforcement of 18 U.S.C. § 2709 (as amended by the USA Patriot Act), and specifically § 2709(c), the nondisclosure provision at the heart of the two appeals. Section 2709(c) provided that no recipient of a National Security Letter (NSL) "shall disclose to any person" that they received such a letter. 18 U.S.C. § 2709(c) (2000).[3] By its terms the statute permanently prohibited a recipient from ever disclosing the

---

**3.** The new § 2709(c) (as amended by the Reauthorization Act) contains this language

modified by additional language.

fact of having received an NSL. *See Butterworth v. Smith,* 494 U.S. 624, 626, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990) (finding similarly worded statute as permanently prohibiting disclosure of grand jury testimony). The government, while conceding the permanent bar, nonetheless declared that § 2709's non-disclosure provision was fully consistent with the First Amendment. Such a proposition should be greeted with a healthy dose of judicial skepticism. A permanent ban on speech seems highly unlikely to survive the test of strict scrutiny, one where the government must show that the statute is narrowly tailored to meet a compelling government interest. *See Ashcroft v. ACLU,* 542 U.S. 656, 665–66, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004); *Kamasinski v. Judicial Review Council,* 44 F.3d 106, 109 (2d Cir.1994) (applying strict scrutiny to Connecticut judicial investigation gag statute).

It seems to me that courts resolve the tension between the government's interest in maintaining the integrity of its investigative process and the First Amendment in favor of the government so long as the ban on disclosure is limited. The cases also hold that a ban on speech is not constitutionally permissible once the investigation ends. For instance, the Supreme Court in *Butterworth* teaches that a "permanent ban on disclosure of [a witness's] own testimony once a grand jury has been discharged" violates the First Amendment. 494 U.S. at 632, 110 S.Ct. 1376. Similarly in *Kamasinski,* we "conclude[d] that [a] *limited* ban on disclosure of the fact of filing or the fact that testimony was given does not run afoul of the First Amendment." 44 F.3d at 111 (emphasis added). But, we further held that "the ban on disclosure is constitutional only so long as the [government] acts in its investigatory capacity." *Id.* at 112.

The government advanced the "mosaic theory" as one of the reasons to support a permanent ban on speech. That theory envisions thousands of bits and pieces of apparently innocuous information, which when properly assembled create a picture. At bottom the government's assertion is simply that antiterrorism investigations are different from other investigations in that they are derivative of prior or concurrent investigations. Thus, permanent non-disclosure is necessary because, implicitly in the government's view, all terrorism investigations are permanent and unending.

The government's urging that an endless investigation leads logically to an endless ban on speech flies in the face of human knowledge and common sense: witnesses disappear, plans change or are completed, cases are closed, investigations terminate. Further, a ban on speech and a shroud of secrecy in perpetuity are antithetical to democratic concepts and do not fit comfortably with the fundamental rights guaranteed American citizens. Unending secrecy of actions taken by government officials may also serve as a cover for possible official misconduct and/or incompetence.

Moreover, with regard to having something be secret forever, most Americans would agree with Benjamin Franklin's observation on our human inability to maintain secrecy for very long. He wrote "three may keep a secret, if two of them are dead." Benjamin Franklin, Poor *Richard's Almanack* 8 (Dean Walley ed., Hallmark 1967) (1732). In fact, what happened in the Connecticut case bears out Franklin's astute observation. While striving to keep the identities of the Connecticut plaintiffs secret, the government inadvertently revealed their identities through public court filings. This revelation was widely reported in the media. Thus, the

case assumed the awkward posture where the identities of the Connecticut plaintiffs were published, yet the government continued to insist that the Connecticut plaintiffs may not identify themselves and that their identities must still be kept secret. This is like closing the barn door after the horse has already bolted.

Since the passage of the Reauthorization Act, the government asserts that we should vacate the District of Connecticut's preliminary injunction rather than leaving it unreviewed on appeal. *See per curiam, supra* at 7–8. To me, the government's request for vacatur in the Connecticut case is not surprising, but right in line with the pervasive climate of secrecy. It sought to prevent, through § 2709(c), the Doe plaintiffs from ever revealing that they were subjects of an NSL, effectively keeping that fact secret forever. Then, by requesting vacatur of the decision below, the government attempts to purge from the public record the fact that it had tried and failed to silence the Connecticut plaintiffs.

While everyone recognizes national security concerns are implicated when the government investigates terrorism within our Nation's borders, such concerns should be leavened with common sense so as not *forever* to trump the rights of the citizenry under the Constitution. Cf. *Hamdi v. Rumsfeld,* 542 U.S. 507, 536, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004) ("[A] state of war is not a blank check for the President when it comes to the rights of the Nation's citizens."). As Justice Black wrote in New York Times Co. v. Washington Post Co.; *United States v.* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971): "The word 'security' is a broad, vague generality whose contours should not be invoked to abrogate the fundamental law embodied in the First Amendment. The guarding of military and diplomatic secrets at the expense of informed representative government provides no real security for our Republic." *Id.* at 719, 91 S.Ct. 2140 (Black, J., concurring).

Although I concur in the *per curiam* that declines to resolve the novel First Amendment issue before us on this appeal, that does not mean I think that issue unworthy of comment. Hence, this concurrence.