In re NATIONAL SECURITY LETTER.

No. C 11–02173 SI.

United States District Court,
N.D. California.

March 14, 2013.

Steven Yale Bressler, U.S. Department of Justice, Washington, DC, for In re National Security Letter.

## ORDER GRANTING MOTION TO SET ASIDE NSL LETTER

SUSAN ILLSTON, District Judge.

Pursuant to the National Security Letter Statute, 18 U.S.C. § 2709, the FBI issued a National Security Letter ("NSL") to Petitioner, an electronic communication service provider ("ECSP"), seeking "subscriber information." By certifying, under section 2709(c)(1), that disclosure of the existence of the NSL may result in "a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person," the FBI was able to prohibit Petitioner from disclosing the existence of the NSL. Petitioner filed a Petition to Set Aside the National Security Letter and Nondisclosure Requirement, pursuant to 18 U.S.C. §§ 3511(a) and (b).[1]

---

1. While the documents submitted in this case were filed under seal, the parties have agreed to unseal partially redacted versions of the parties' briefing on the Petition to Set Aside and the government's Motion to Compel

Petitioner challenges the constitutionality—both facially and as applied—of the nondisclosure provision of 18 U.S.C. § 2709(c) and the judicial review provisions of 18 U.S.C. § 3511(b) (collectively "NSL nondisclosure provisions"). Petitioner argues that the nondisclosure provision of the statute is an unconstitutional prior restraint and content-based restriction on speech. More specifically, Petitioner contends that the NSL provisions lack the necessary procedural safeguards required under the First Amendment, because the government does not bear the burden to seek judicial review of the nondisclosure order and the government does not bear the burden of demonstrating that the nondisclosure order is necessary to protect specific, identified interests. Petitioner also argues that the NSL nondisclosure provisions violate the First Amendment because they act as a licensing scheme providing unfettered discretion to the FBI, and that the judicial review provisions violate separation of powers principles because the statute dictates an impermissibly restrictive standard of review for courts adjudicating challenges to nondisclosure orders.

In addition, Petitioner attacks the substantive provisions of the NSL statute itself, both separately and in conjunction with the nondisclosure provisions, arguing that the statute is a content-based restriction on speech that fails strict scrutiny.

The government opposed the Petition, filed a separate lawsuit seeking a declaration that Petitioner is required to comply with the NSL,[2] and filed a motion to compel compliance with the NSL in this case.[3] In its opposition to the Petition, the government argues that the NSL statute satisfies strict scrutiny and does not impinge on the anonymous speech or associational rights of the subscriber whose information is sought in the NSL. The government also asserts that the nondisclosure provisions are appropriately applied to Petitioner, because the nondisclosure order is not a "classic prior restraint" warranting the most rigorous scrutiny and because it was issued in this case after an adequate certification from the FBI. Finally, the government argues that the standards of judicial review provided for review of NSLs and nondisclosure orders are constitutional. In support of its arguments in opposition to the Petition, as well as in support of its own motion to compel compliance with the NSL, the government relies on a classified declaration from a senior official with the FBI, which the Court has reviewed. The government filed a redacted and unclassified version of the FBI official's declaration, which has been provided to Petitioner and its counsel.

For the reasons discussed below, the Court finds that the NSL nondisclosure and judicial review provisions suffer from significant constitutional infirmities. Fur-

---

Compliance with the Petition. *See* Docket Nos. 28, 38. This Order is not sealed and shall be publicly available.

**2.** *See* Civ. No. 11–2667 (Under Seal).

**3.** With respect to the substantive portions of the NSL as applied to this case, Petitioner argues that the FBI's certification of necessity for the subscriber information at issue does not demonstrate that an enumerated harm contemplated by the statute would occur absent disclosure, and that the FBI has failed to

affirmatively demonstrate that the investigation at issue is not being conducted solely on the basis of activities protected by the First Amendment. Petition at 24. As discussed below, because the Court finds the NSL nondisclosure provisions constitutionally infirm and concludes that the nondisclosure provisions cannot be severed from the substantive NSL provisions, the Court does not reach the issue of whether the FBI has made a sufficient showing to require Petitioner to comply with the NSL.

ther, those infirmities cannot be avoided by "conforming" the language of the statute to satisfy the Constitution's demands, because the existing statutory language and the legislative history of the statutes block that result. As such, the Court finds section 2709(c) and 3511(b) unconstitutional, but stays the judgment in order for the Ninth Circuit to consider the weighty questions of national security and First Amendment rights presented in this case.

## BACKGROUND

### 1. NSL Statutes at Issue

Sections 2709(a) and (b) of Title 18 of the United Sates Code provide that a wire or electronic communication service provider shall comply with a request[4] for specified categories of subscriber information if the Director of the FBI or his designee certifies that the records sought are relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities, provided that such an investigation of a United States person is not conducted solely on the basis of activities protected by the First Amendment to the Constitution of the United States. Section 2709(c)(1) provides that if the Director of the FBI or his designee certifies that "there may result a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person," the recipient of the NSL shall not disclose to anyone (other than to an attorney to obtain legal advice or legal assistance with respect to the request) that the FBI has sought or obtained access to information or records sought in the NSL. Section (c)(2) provides that the FBI shall inform the recipient of the NSL of the nondisclosure requirement.

Section 3511 provides for judicial review of NSLs and nondisclosure orders issued under section 2709 and other NSL statutes.[5] Under 3511(a), the recipient of an NSL may petition a district court for an order modifying or setting aside the NSL. The court may modify the NSL, or set it aside, only "if compliance would be unreasonable, oppressive, or otherwise unlawful." Under 3511(b)(2), an NSL recipient subject to a nondisclosure order may petition a district court to modify or set aside the nondisclosure order. If the NSL was issued within a year of the time a challenge to the nondisclosure order is made, a court may "modify or set aside such a nondisclosure requirement if it finds that there is no reason to believe that disclosure may endanger the national security of the United States, interfere with a criminal, counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or endanger the life or physical safety of any person." However, if a specified high ranking government official (*i.e.,* the Attorney General, Deputy or Assistant Attorney Generals, the Director of the Federal Bureau of Investigation, or agency heads) certifies that disclosure "may endanger the national security of the United States or interfere with diplomatic relations, such certification shall be treated as conclusive unless the court finds that the certification was made in bad faith." 18 U.S.C. § 3511(b)(2).

Under 3511(b)(3), if the petition to modify or set aside the nondisclosure order is filed more than one year after the NSL

---

4. This request is generally referred to as a "National Security Letter," or "NSL."

5. *See* 12 U.S.C. § 3414(a)(5) (financial records); 15 U.S.C. § 1681u (credit history); 15

U.S.C. § 1681v (full credit reports); 50 U.S.C. § 436 (information concerning investigation of improper disclosure of classified information).

issued, a specified government official, within ninety days of the filing of the petition, shall either terminate the nondisclosure requirement or re-certify that disclosure may result in an enumerated harm. If the government provides that re-certification, the Court may again only alter or modify the NSL if there is "no reason to believe that disclosure may" have the impact the government says it may, and the court must treat the certification as "conclusive unless the court finds that the re-certification was made in bad faith." Finally, if the court denies a petition for an order modifying or setting aside a nondisclosure order, "the recipient shall be precluded for a period of one year from filing another petition to modify or set aside such nondisclosure requirement."

Under 3511(d) and (e) the Court may close hearings to "the extent necessary to prevent an unauthorized disclosure of a request for records," may seal records regarding any judicial proceedings, and "shall, upon request of the government, review *ex parte* and *in camera* any government submission, or portions thereof, which may include classified information."

### 2. Prior Cases Testing Constitutionality of the NSL Provisions

This Court is not the first to address the constitutionality of the NSL provisions currently in effect. In *Doe v. Gonzales,* 500 F.Supp.2d 379 (S.D.N.Y.2007), affirmed in part and reversed in part and remanded by *John Doe, Inc. v. Mukasey,* 549 F.3d 861 (2d Cir.2008), the District Court found that the nondisclosure provision was a prior restraint and a content-based restriction on speech that violated the First Amendment because the government did not bear the burden to seek prompt judicial review of the nondisclosure

order. 500 F.Supp.2d at 406 (relying on *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965)).[6] The District Court approved allowing the FBI to determine whether disclosure would jeopardize national security, finding that the FBI's discretion in certifying a need for nondisclosure of an NSL "is broad but not inappropriately so under the circumstances" of protecting national security. *Id.* at 408–09. However, the District Court determined that section 3511(b)'s restriction on when a court may alter or set aside an NSL-only if there is no reason to believe that disclosure will result in one of the enumerated harms-in combination with the statute's direction that a court must accept the FBI's certification of harm as "conclusive unless the court finds that the certification was made in bad faith," were impermissible attempts to restrict judicial review in violation of separation of powers principles. *Id.* at 411–13. The District Court found that the unconstitutional nondisclosure provisions were not severable from the substantive provisions of the NSL statute, and declined to address whether the unconstitutional judicial review provision-which implicated review of other NSLs, not just NSLs to electronic communication service providers at issue—was severable.

The District Court's decision was affirmed in part, reversed in part and remanded by the Second Circuit Court of Appeals in *John Doe, Inc. v. Mukasey,* 549 F.3d 861 (2d Cir.2008). In that opinion, the Second Circuit found that while not a "classic prior restraint" or a "broad" content-based prohibition on speech necessitating the "most rigorous First Amendment scrutiny," the nondisclosure requirement was sufficiently analogous to them to

---

**6.** For an extensive discussion of the history and use of NSLs, as well as the legislative history of the specific NSL provisions chal- lenged by Petitioner, *see Doe v. Gonzales,* 500 F.Supp.2d 379, 387–392 (S.D.N.Y.2007).

justify the application of the procedural safeguards announced in *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, particularly the third *Freedman* prong requiring the government to initiate judicial review. *Id.* at 881 ("in the absence of Government-initiated judicial review, *subsection 3511(b)* is not narrowly tailored to conform to *First Amendment* procedural standards."). However, in order to avoid the constitutional deficiencies, the Court read into the statute a requirement that the government inform each NSL recipient that the recipient could contest the nondisclosure requirements and if contested, the government would initiate judicial review within 30 days, and that review would conclude within 60 days. Under the Second Circuit's "conforming" of section 2709(c), the *Freedman* concerns were met.

The Second Circuit also found the restrictions on the District Court's review of the adequacy of the FBI's justification for nondisclosure orders problematic. In order to avoid some of the problems, the Second Circuit accepted three concessions by the government that narrowed the operation of sections 2709(c) and 3511(b) in significant respects. First, the Court accepted the government's position—offered in litigation—that the section 2709(c) nondisclosure requirement applies *only* if the FBI certifies that an enumerated harm related to an authorized investigation to protect against international terrorism or clandestine intelligence activity may occur. *Id.* 875.[7] Second, the Court accepted the government's litigation position that section 3511(b)(2)'s requirement that a court may alter or modify the nondisclosure agreement only if there "is no reason to

believe that disclosure may" risk one of the enumerated harms, should be read to mean that a court may alter or modify the nondisclosure agreement unless there is "some reasonable likelihood" that the enumerated harm will occur. Third, the Court accepted the government's agreement that it would bear the burden of proof to persuade a district court—through evidence submitted *in camera* as necessary—that there is a good reason to believe that disclosure may risk one of the enumerated harms; and that the district court must find that such a good reason exists. *Id.* at 875–76.

In interpreting section 3511(b) to require the government to show a "good" reason that an enumerated harm related to international terrorism or clandestine intelligence activity may result, and requiring the government to submit proof to the district court to support its certification, the Second Circuit found that a court would have—consistent with its duty independently to assess First Amendment restraints in light of national security concerns—"a basis to assure itself (based on *in camera* presentations where appropriate) that the link between the disclosure and risk of harm is substantial." *Id.* at 881. After implying these limitations—based on the government's litigation concessions—the Second Circuit found that most of the significant constitutional deficiencies found by the district court could be avoided. However, the Second Circuit affirmed the holding that section 3511(b)(2) and (b)(3)'s provision that government certifications must be treated as "conclusive" is not "meaningful judicial review" as required by the First Amendment. *Id.* at 882. In conclusion, the Second Circuit

---

7. As written, the statute allows for nondisclosure orders to issue in connection with NSLs where the government certifies that "there may result a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person." 18 U.S.C. § 2709(c).

severed the conclusive presumption provision of section 3511(b), but left intact the remainder of section 3511(b) and the entirety of section 2709, with the added imposed limitations and "with government-initiated review as required." *Id.* at 885.[8]

In the pleadings in the present case, the government did not state whether it was complying with the narrowing constructions and the procedural requirements imposed on the NSL nondisclosure provisions by the Second Circuit. However, at the hearing before this Court, the government asserted that it was following the mandates imposed by the Second Circuit in the *John Doe, Inc. v. Mukasey* decision for *all* NSLs being issued, since it would be impracticable to attempt to comply with that decision only in the Second Circuit.

At the hearing, this Court also asked Petitioner whether in its view the challenged NSL nondisclosure provisions would survive constitutional scrutiny if the requirements imposed by the Second Circuit were adopted by Congressional amendment. Petitioner agreed that the nondisclosure provisions if so amended would be constitutional, but argued that the NSL provisions cannot be saved by judicial reconstruction but only through Congressional amendment.

## DISCUSSION

### 1. Jurisdiction Over the Constitutional Challenge

█ The government argues first that this Court does not have jurisdiction to consider Petitioner's constitutional challenges to the NSL nondisclosure provisions. Under section 3511(a)'s judicial review provision, courts can "modify or set aside" NSLs if compliance would be "unreasonable, oppressive, or otherwise un-

lawful." Under section 3511(b), a court can "modify or set aside" nondisclosure orders if "if it finds that there is no reason to believe that disclosure may endanger the national security of the United States, interfere with a criminal, counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or endanger the life or physical safety of any person." As the scope of judicial review expressly provided is limited to those two issues, the government contends this Court cannot review the constitutionality of the NSL provisions in this action brought pursuant to section 3511. Govt. Oppo. at 6–7. The Court disagrees. As part of determining whether to modify or set aside an NSL—which Petitioner seeks to do in this case—the Court can review the constitutional attack on the statute, because the statute's constitutionality implicates whether an NSL served on a wire or electronic communications provider, including this one, is unreasonable or unlawful. *Cf. AFGE Local 1 v. Stone,* 502 F.3d 1027, 1039 (9th Cir.2007) (where statutory scheme did "not clearly state an intention on the part of Congress to preclude judicial review of constitutional claims," those claims should be adjudicated). In any event, the government does not dispute that, even without the judicial review provisions in section 3511(a) and (b), the court can exercise its fundamental obligation to determine the constitutionality of the NSL nondisclosure provisions under the Declaratory Relief Act, 28 U.S.C. § 2201. *Cf. Doe v. Ashcroft,* 334 F.Supp.2d 471, 475 (S.D.N.Y. 2004), vacated and remanded by *Doe I v. Gonzales,* 449 F.3d 415 (2d Cir.2006) (finding Section 2709's nondisclosure provision—prior to enactment of judicial review provisions in Section 3511—unconstitution-

---

**8.** Because the government did not concede or voluntarily offer to be the party to initiate court review of challenged nondisclosure order, the Court enjoined the government from enforcing the nondisclosure requirements in absence of government-initiated judicial review. *Id.*

al in part because former Section 2709 "effectively bars or substantially deters any judicial challenge to the propriety of an NSL request.").

## 2. Level of Scrutiny

Petitioner contends that the nondisclosure order amounts to both a classic prior restraint on speech and a content-based restriction on speech, and urges that accordingly exacting levels of scrutiny be used in evaluating the restriction.

Petitioner argues that the nondisclosure order is a classic prior restraint on speech, noting that it prohibits recipients of an NSL from speaking not just about the NSL's contents and target, but even about the existence or receipt of the NSL. *See, e.g., Alexander v. United States,* 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993) ("The term 'prior restraint' is used 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.'" (quoting M. Nimmer, *Nimmer on Freedom of Speech* § 4.03, p. 4–14 (1984))). Petitioner argues that, as a "classic" prior restraint, the statute can only be saved if disclosure of the information from NSLs will "surely result in direct, immediate, and irreparable damage to our Nation or its people." *New York Times Co. v. United States (Pentagon Papers),* 403 U.S. 713, 730, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (Stewart, J., joined by White, J. concurring).

Petitioner also contends that the NSL nondisclosure order is a content-based restriction on speech, because it targets a specific category of speech—speech regarding the NSL. As a content-based restriction, the nondisclosure provision is "presumptively invalid," *R.A.V. v. St. Paul,* 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), and can only be sustained if it is "narrowly tailored to promote a compelling Government interest.... If a

less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *United States v. Playboy Entm't Group,* 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000) (citation omitted).

█ The Court finds that given the text and function of the NSL statute, Petitioner's proposed standards are too exacting. Rather, this Court agrees with the analysis of the Second Circuit in *John Doe, Inc. v. Mukasey,* and finds that while section 2709(c) may not be a "classic prior restraint" or a "typical" content-based restriction on speech, the nondisclosure provision clearly restrains speech of a particular content—significantly, speech about government conduct. *John Doe, Inc. v. Mukasey,* 549 F.3d 861, 876, 878 (2d Cir. 2008). Under section 2709(c), the FBI has been given the unilateral power to determine, on a case-by-case basis, whether to allow NSL recipients to speak about the NSLs. As a result, the recipients are prevented from speaking about their receipt of NSLs and from disclosing, as part of the public debate on the appropriate use of NSLs or other intelligence devices, their own experiences. In these circumstances, the Court finds that while section 2709(c) does not need to satisfy the extraordinarily rigorous *Pentagon Papers* test, section 2709(c) must still meet the heightened justifications for sustaining prior-restraints announced in *Freedman v. Maryland* and must be narrowly tailored to serve a compelling governmental interest. *See John Doe, Inc. v. Mukasey,* 549 F.3d at 878–881 (applying third *Freedman* procedural safeguard); *see also id.* at 878 (noting government conceded strict scrutiny applied in that case).

The Court is not persuaded by the government's attempt to avoid application of the *Freedman* procedural safeguards by analogizing to cases which have upheld restrictions on disclosures of information

by individuals involved in civil litigation, grand jury proceedings and judicial misconduct investigations. The concerns that justified restrictions on a civil litigant's *pre-trial* right to disseminate confidential business information obtained in discovery—a restriction that was upheld by the Supreme Court in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)—are manifestly not the same as the concerns raised in this case. Here, the concern is the government's unilateral ability to prevent individuals from speaking out about the government's use of NSLs, a subject that has engendered extensive public and academic debate.[9]

The government's reliance on cases upholding restrictions on witnesses in grand jury or judicial misconduct proceedings from disclosing information regarding those proceedings is similarly misplaced. With respect to grand jury proceedings, the Court notes that the basic presumption in federal court is that grand jury witnesses are not bound by secrecy with respect to the content of their testimony. *See, e.g., In re Grand Jury*, 490 F.3d 978, 985 (D.C.Cir.2007) ("The witnesses themselves are not under an obligation of secrecy."). While courts have upheld state law restrictions on grand jury witnesses' disclosure of information learned only through participation in grand jury proceedings, those restrictions were either limited in duration or allowed for broad judicial review. *See, e.g., Hoffmann–Pugh*

*v. Keenan*, 338 F.3d 1136, 1140 (10th Cir. 2003) (agreeing state court grand jury witness could be precluded from disclosing information learned through giving testimony, but noting state law provides a mechanism for judicial determination of whether secrecy still required); *cf. Butterworth v. Smith*, 494 U.S. 624, 632, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990) (interests in grand jury secrecy do not "warrant a permanent ban on the disclosure by a witness of his own testimony once a grand jury has been discharged.").

Importantly, as the Second Circuit recognized, the interests of secrecy inherent in grand jury proceedings arise from the nature of the proceedings themselves, including "enhancing the willingness of witnesses to come forward, promoting truthful testimony, lessening the risk of flight or attempts to influence grand jurors by those about to be indicted, and avoiding public ridicule of those whom the grand jury declines to indict." *John Doe, Inc. v. Mukasey*, 549 F.3d at 876. In the context of NSLs, however, the nondisclosure requirements are imposed at the demand of the Executive Branch "under circumstances where the secrecy might or might not be warranted." *Id.* at 877. Similarly, the secrecy concerns which inhere in the nature of judicial misconduct proceedings, as well as the temporal limitations on a witness's disclosure regarding those proceedings, distinguish those proceedings from section 2709(c). *Id.*[10]

---

**9.** *See, e.g.,* Statement of Glenn Fine, Inspector General, U.S. Department of Justice before the Senate Judiciary Committee concerning Reauthorizing the USA Patriot Act (September 23, 2009) <*www.iustice.gov/oig/testimony/t0909.pdf*>; 72 Geo. Wash. L. Rev., August 2004, *The Future of Internet Surveillance Law: A Symposium to Discuss Internet Surveillance, Privacy & The USA Patriot Act;* Editorial, *Breaking a Promise on Surveillance,* N.Y. Times, July 29, 2010, at 22.

**10.** The cases relied on by the government, where restrictions on speech were not consid-

ered prior restraints because speakers were not restrained in advance but instead subjected to potential criminal penalties after the speech occurred, are also inapposite. *See, e.g., Cooper v. Dillon*, 403 F.3d 1208, 1215 (11th Cir.2005); *see also CBS Inc. v. Davis*, 510 U.S. 1315, 1317, 114 S.Ct. 912, 127 L.Ed.2d 358 (1994) (distinguishing between "a threat of criminal or civil sanctions after publication" which "chills speech" and a prior restraint which "freezes" speech) (citation omitted); *Landmark Communications v. Va.*, 435 U.S. 829, 838, 98 S.Ct. 1535, 56 L.Ed.2d

### 3. Procedural Safeguards

Having concluded that the procedural safeguards mandated by *Freedman* should apply to section 2709(c), the question becomes whether those standards are satisfied by section 2709(c). *Freedman* requires that " '(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.' " *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 321, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 227, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (O'Connor, J., joined by Stevens, and Kennedy, JJ.)).

The government argues that even if the *Freedman* factors apply to section 2709(c), the manner in which Petitioner's NSL and court challenge have, in fact, been handled by the FBI satisfy those factors. The government is attempting to foreclose Petitioner's facial attack on the NSL provisions by arguing that this Court must defer to the government's "authoritative constructions" of the NSL statute, including its implementation in this case. *See, e.g.*, Govt. Oppo. at 20, n.10. The Court, however, has not been presented with any *evidence* of an "authoritative construction." There is no evidence that the De-

partment of Justice has implemented regulations to impose the constructions and safeguards mandated by the Second Circuit in the *John Doe v. Mukasey* decision. There is no evidence that either the DOJ or the FBI has adopted a formal "policy" adhering to those constructions and safeguards. The most the government says in its briefs is that consistent with "usual FBI practice," the NSL at issue informed Petitioner that if Petitioner objected to the NSL, the FBI would seek judicial review within 30 days. At oral argument, government counsel stated that it continued to comply with *Freedman's* procedural requirements. But, a statement in a brief of "usual practice" and a commitment to continue that practice made in court are not sufficient to demonstrate the existence of—and thereby mandate court deference to—an agency's "authoritative construction" of a licensing scheme, much less a content-based scheme like the one at issue. *Cf. Ward v. Rock Against Racism*, 491 U.S. 781, 795–796, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (finding that "[a]dministrative interpretation and implementation of a regulation are, of course, highly relevant to our analysis" of a facial challenge to a content-neutral time, place and manner regulation impacting speech).[11] The risks of unwarranted suppression of speech inherent in content-based speech restrictions cannot be adequately ameliorated by governmental

---

1 (1978) (appellant did not dispute that statute imposing criminal sanctions for disclosure of confidential proceedings of judicial misconduct was not "a prior restraint or attempt by the State to censor the news media."). Here, the recipients of NSLs are not merely warned that disclosing the NSL could result in criminal sanctions, but ordered in the NSLs themselves not to disclose its existence or its contents. *See* Section 2709(c)(1) ("no wire or electronic communications service provider ... shall disclose to any person ... that the Federal Bureau of Investigation has sought or

obtained access to information or records under this section."); Section 2709(c)(2) ("request" shall notify the recipient of the "nondisclosure requirement").

**11.** That the government likewise initiated judicial review in another case, after an NSL recipient requested the government seek judicial review of the NSL nondisclosure requirement, does not change this conclusion. *See* Case No 12–0007 (AJT/IDD) (E.D. Va. April 24, 2012) (partially unsealed order).

promises to comply with *Freedman's* requirements.

Similarly, even if the FBI is in fact complying with both the procedural and substantive requirements imposed by the Second Circuit for all NSLs issued, the fact that the statute is facially deficient—in not mandating the procedural and substantive protections discussed below—presents too great a risk of potential infringement of First Amendment rights to allow the FBI to side-step constitutional review by relying on its voluntary, nationwide compliance with the Second Circuit's limitations. *Cf. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs, Inc.*, 528 U.S. 167, 174, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) ("A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case.").

Another significant factor weighs in favor of this Court resolving the facial challenge: despite evidence demonstrating that tens of thousands of NSLs are issued each year—and by the government's own estimate, 97% of them may come with a nondisclosure order—only a handful of challenges to the NSL provisions have been brought. *Compare* DOJ Office of Inspector General "A Review of the Federal Bureau of Investigation's Use of National Security Letters," March 2007 at 120 <*www.usdoj.gov/oig/special/s0703b/final.pdf*> (noting that in 2005, more than 47,000 NSL requests were issued) *with Doe v. Gonzales*, 500 F.Supp.2d 379, 405 (S.D.N.Y.2007) (finding as of 2007 that only two challenges have been made in federal court since the original enactment of the NSL statute).[12]

All of these factors weigh in favor of this Court reviewing Petitioner's facial challenge. Simply because the government chose to meet the *Freedman* safeguards in issuing and seeking to compel the NSL at issue here, does not foreclose Petitioner's ability to challenge the constitutionality of the statute's provisions.

### A. Government Must Initiate Judicial Review and Bear Burden of Proof

There is no dispute that the NSL provisions do not require the government to initiate judicial review of NSL nondisclosure orders. The Second Circuit found that this deficiency rendered the NSL provisions unconstitutional, but suggested that *if* the government were to inform recipients that they could object to the nondisclosure order, and that if they objected, the government would seek judicial review, then the constitutional problem could be avoided. *John Doe, Inc. v. Mukasey*, 549 F.3d at 879. The Second Circuit noted that there are three ways the government could satisfy this requirement: (1) by interpreting its authority in section 3511(c) to move to compel compliance with an NSL to also encompass a petition for judicial review of the nondisclosure order; (2) by identifying another way to invoke the equitable power of a district court to prevent disclosure of the NSL; or (3) by seeking explicit Congressional authorization. *Id.* at 884.

There is no evidence in this record as to which option, if any, the government has decided to follow, although the government did file a complaint for declaratory and injunctive relief in support of the NSL and

---

**12.** The Court recognizes that a more recent challenge to a nondisclosure order was brought in 2012. However, in that case, while the NSL recipient requested the government to obtain judicial review of the nondisclosure requirement, the NSL recipient did not appear in Court or otherwise participate in the Eastern District of Virginia proceedings. *See* partially unsealed April 24, 2012 Order in Case No 12–0007 (AJT/IDD) (E.D. Va. April 24, 2012).

nondisclosure order here, after receiving notice that Petitioner intended to contest both the NSL and the nondisclosure order. *See* Case No. 11–02173, Docket No. 1 filed June 3, 2011 (Under Seal).

With respect to the burden of proof, there is no requirement in the statute that the government bear any specific burden of proof, in terms of the showing necessary to justify the nondisclosure order. To the contrary, section 3511(b) provides that a court may modify or set aside a nondisclosure requirement only if the court finds there is "no reason to believe" that disclosure "may" endanger national security, interfere with an investigation or diplomatic relations, or endanger any person. The Second Circuit addressed this issue by construing 3511(b)(2) and (b)(3) to place on the government the burden to show that a "good reason" exists to expect disclosure of receipt of an NSL will risk an enumerated harm. The Second Circuit suggested that the government could satisfy this burden by providing evidence to the court— submitted *ex parte* and *in camera* if necessary—showing why disclosure in a particular case could result in an enumerated harm. *John Doe, Inc. v. Mukasey,* 549 F.3d at 883. Here, the government did not address the burden of proof requirement of the third *Freedman* prong or explain its position, other than noting that in *this* case it submitted a classified declaration in support of its opposition to the Petition and in support of its motion to compel compliance with the NSL.

### B. Short Period of Time Prior to Judicial Review

 Under *Freedman's* first prong, any restraint prior to judicial review can be imposed only for a specified brief period. The NSL provisions do not provide any limit to the period of time the nondisclosure order can be in place prior to judicial review. The Second Circuit addressed this problem by finding that *if* the government were to notify NSL recipients that if they objected to the nondisclosure order within 10 days, the government would seek judicial review of the nondisclosure restriction within 30 days, then this *Freedman* factor would be satisfied. This Court agrees that if the statute, or a regulation implementing the NSL provisions, imposed the time limitations suggested by the Second Circuit, that would be sufficient. But that is not the record before the Court.[13]

### 4. Narrowly Tailored to Serve a Compelling Governmental Interest

In addition to satisfying the *Freedman* procedural safeguards, as content-based restrictions on speech, the NSL nondisclosure provisions must be narrowly tailored to serve a compelling governmental interest.

It is undisputed that our national security interests are compelling. *See, e.g., Haig v. Agee,* 453 U.S. 280, 307, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981) ("no governmental interest is more compelling than the security of the Nation."). The question is whether the NSL nondisclosure provisions are sufficiently narrowly tailored to serve that compelling interest without unduly burdening speech.

The Court finds that the NSL nondisclosure provisions are not narrowly tailored on their face, since they apply, without distinction, to both the content of the NSLs and to the very fact of having received one. The government has a strong argument[14] that allowing the government

---

13. Petitioner does not challenge section 2709(c) under the second *Freedman* factor, that "expeditious judicial review" must be available.

14. The argument is supported by the information provided in the declaration of a high ranking FBI official, submitted to the Court *ex parte* and to the Petitioner in a redacted form.

to prohibit recipients of NSLs from disclosing the specific information sought in NSLs to either the targets or the public is generally necessary to serve national security in ongoing investigations. However, the government has *not* shown that it is generally necessary to prohibit recipients from disclosing the mere fact of their receipt of NSLs. The statute does not distinguish—or allow the FBI to distinguish—between a prohibition on disclosing mere receipt of an NSL and disclosing the underlying contents. The statute contains a blanket prohibition: when the FBI provides the required certification, recipients cannot publicly disclose the receipt of an NSL. A review of the FBI's use of NSLs discloses that the FBI issued nondisclosure orders for 97% of the NSLs it had issued. *See* Statement of Glenn Fine, Inspector General, U.S. Department of Justice before the Senate Judiciary Committee concerning Reauthorizing the USA Patriot Act (September 23, 2009) at 6 <www.justice.gov/oig/testimony/t0909. pdf>. This pervasive use of nondisclosure orders, coupled with the government's failure to demonstrate that a blanket prohibition on recipients' ability to disclose the mere fact of receipt of an NSL is necessary to serve the compelling need of national security, creates too large a danger that speech is being unnecessarily restricted. *See, e.g., Speiser v. Randall,* 357 U.S. 513, 525, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958) ("[T]he line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn. . . . The separation of legitimate from illegitimate speech calls for more sensitive tools . . . .") (internal citations omitted).

To be sure, the First Amendment concerns at issue do not require that every recipient of an NSL must be allowed to disclose the fact of their receipt of an NSL. It is not hard to surmise situations where recipients would appropriately be precluded from disclosing their receipt of an NSL. For example if an ECSP has only a handful of subscribers, disclosure could compromise a national security investigation. The problem, however, is that the statute does nothing to account for the fact that when no such national security concerns exist, thousands of recipients of NSLs are nonetheless prohibited from speaking out about the mere fact of their receipt of an NSL, rendering the statute impermissibly overbroad and not narrowly tailored. This is especially problematic in light of the active, continuing public debate over NSLs, which has spawned a series of Congressional hearings, academic commentary, and press coverage. *See* fn. 9 *supra.* Indeed, at oral argument, Petitioner was adamant about its desire to speak publicly about the fact that it received the NSL at issue to further inform the ongoing public debate.

In addition to the breadth of the nondisclosure provision, the Court is concerned about its duration. Nothing in the statute requires or even allows the government to rescind the non-disclosure order once the impetus for it has passed. Instead, the review provisions require *the recipient* to file a petition asking the Court to modify or set aside the nondisclosure order. 18 U.S.C. § 3511(b). The issuance of a nondisclosure order is, in essence, a permanent ban on speech absent the rare recipient who has the resources and motivation to hire counsel and affirmatively seek review by a district court. Also problematic is the fact that if a recipient seeks review, and the court declines to modify or set aside the nondisclosure order, a recipient is precluded from filing another petition to modify or set aside for a year, even if the need for nondisclosure would cease within that year. 18 U.S.C. § 3511(b)(3). By their structure, therefore, the review provisions are overbroad because they ensure that nondisclosure continues longer than necessary to serve the national secu-

rity interests at stake. *See also Doe v. Gonzales*, 500 F.Supp.2d 379, 421 (S.D.N.Y.2007), affirmed in part and reversed in part by *John Doe, Inc. v. Mukasey*, 549 F.3d 861 (2d Cir.2008) ("Once disclosure no longer poses a threat to national security, there is no basis for further restricting NSL recipients from communicating their knowledge of the government's activities. International terrorism investigations might generally last longer than run-of-the-mill domestic criminal investigations, but they do not last forever.").

### 5. Prescribing the Standards of Judicial Review

■ As noted above, section 3511(b) allows for judicial review, but the scope of that review is narrow. In particular, the statute provides that a district court may only modify or set aside the nondisclosure requirement if the court finds "there is no reason to believe" that disclosure "may" result in an enumerated harm. If the FBI certifies that such a harm "may" occur, the district court must accept that certification as "conclusive." Petitioner asserts that these limits on judicial review violate separation of powers principles and violate Petitioner's due process rights to an unbiased decisionmaker.

The Second Circuit addressed the first two issues by interpreting "no reason to believe," as requiring the government to provide a "good reason," and the "may occur" to mean the government must show "some reasonable likelihood" of harm. *John Doe, Inc. v. Mukasey*, 549 F.3d at 875–76. The Second Circuit noted that in making that showing, the government would be required to "at least indicate the

nature of the apprehended harm and provide a court with some basis to assure itself (based on *in camera* presentations where appropriate) that the link between disclosure and risk of harm is substantial." *Id.* at 881.[15] Turning to the third issue, the "conclusive" treatment of the FBI's certification, the Second Circuit found the mandated deference unconstitutional because it would preclude meaningful judicial review. *Id.* at 882–83 ("The fiat of a governmental official, though senior in rank and doubtless honorable in the execution of official duties, cannot displace the judicial obligation to enforce constitutional requirements.").

The Court finds that, as written, the statute impermissibly attempts to circumscribe a court's ability to review the necessity of nondisclosure orders. As noted above, while not a "classic" prior restraint or content-based speech restriction, the NSL nondisclosure provisions significantly infringe on speech regarding controversial government powers. As such, the Court can only sustain nondisclosure based on a searching standard of review, a standard incompatible with the deference mandated by Sections 3511(b) and (c). As written, the statute expressly limits a court's powers to modify or set aside a nondisclosure order to situations where there is "no reason to believe" that disclosure "may" lead to an enumerated harm; and if a specified official has certified that such a harm "may" occur, that determination is "conclusive." The statute's intent—to circumscribe a court's ability to modify or set aside nondisclosure NSLs unless the essentially insurmountable standard "no reason to believe" that a harm "may" result is satisfied—is incompatible with the court's

---

**15.** In this case, the government did not address, either in its briefs or in oral argument, whether it intends to adhere to the substantive limitations adopted by the Second Circuit in all future judicial proceedings reviewing

the imposition of NSL nondisclosure orders. As noted, in this case the FBI submitted a declaration *in camera* presenting an official explanation of the need for nondisclosure in order to justify the order here.

duty to searchingly test restrictions on speech. *See, e.g., John Doe, Inc. v. Mukasey*, 549 F.3d at 883 ("The fiat of a governmental official, though senior in rank and doubtless honorable in the execution of official duties, cannot displace the judicial obligation to enforce constitutional requirements. 'Under no circumstances should the Judiciary become the handmaiden of the Executive.' *United States v. Smith*, 899 F.2d 564, 569 (6th Cir.1990).").

The government argues that in light of the national security context in which NSLs are issued, a highly deferential standard of review is not only appropriate but necessary. The Court does not disagree. Courts necessarily give significant deference to the government's national security determinations.[16] However, that deference must be based on a reasoned explanation from an official that directly supports the assertion of national security interests. As the Second Circuit recognized, the statute might be less objectionable if the statute allowed the Court to determine whether there was a "good reason" to believe an enumerated harm might occur if disclosure were allowed, and that "good reason" required the government to demonstrate "some reasonable likelihood" that an enumerated harm may occur if disclosure of the NSL were allowed. *John Doe, Inc. v. Mukasey*, 549 F.3d at 874–75. However, the language relied on by the Second Circuit is *not* in the statute and, in this Court's view, expressly contradicts the level of deference Congress imposed under Section 3511(b) and (c). The Court also agrees with the Second Circuit that the statute's direction that courts treat the government's certification as "conclusive" is likewise unconstitutional. Treating the government's certification as "conclusive"

diminishes the exacting scrutiny courts must apply to speech restraints down to "no scrutiny" at all. *Id.* at 882–83.

In support of its argument that the "conclusive" deference mandated by Section 3511(b) is permissible, the government also relies on cases arising under the Federal Freedom of Information Act and cases upholding restrictions on former government employees' abilities to disseminate classified or sensitive information. Those cases, however, are distinguishable. They are not prior restraint cases and address only the high level of deference courts generally give to executive branch determinations as to whether the government must release its own classified or national security information. *See, e.g., Ctr. for Nat'l Sec. Studies v. United States DOJ*, 331 F.3d 918 (D.C.Cir.2003) (deferring to government position on release of records under FOIA); *McGehee v. Casey*, 718 F.2d 1137 (D.C.Cir.1983) (upholding government decision to prevent ex-CIA employee from publishing classified information); *see also Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1096 at n. 9 (9th Cir.2010) (in seeking access to government records, "the balance of interests will more often tilt in favor of the Executive when disclosure is the primary end in and of itself. FOIA therefore predictably entails greater deference to the national classification system than does the state secrets doctrine."). These cases do not address the situation faced by Petitioner—the prevention of the disclosure of the fact that Petitioner received an NSL letter and the information sought therein.

**6. Procedures for *In Camera* Review**

█ Finally, Petitioner challenges section 3511(e) to the extent that it forces a

---

**16.** *See, e.g., Al Haramain Islamic Found., Inc. v. United States Dep't of the Treasury*, 686 F.3d 965, 980 (9th Cir.2012) ("We owe unique deference to the executive branch's determi-

nation that we face 'an unusual and extraordinary threat to the national security' of the United States.").

court "upon request of the government" to review government submissions *ex parte* and *in camera*. Petitioner asserts that the decision whether to review materials *ex parte* and *in camera* should rest with the courts, and that *ex parte* and *in camera* proceedings lack fundamental fairness. The Court recognizes Petitioner's concerns, but does not find section 3511(e) unconstitutional. Despite the language of the statute, which attempts to mandate that a court review materials *ex parte* and *in camera* at the demand of the government, courts have an inherent ability to determine on their own whether there is a need to review materials *ex parte* and *in camera* and if so, the steps to be taken to minimize any unfairness. *See Doe v. Gonzales,* 500 F.Supp.2d 379, 423 (S.D.N.Y. 2007) (the "Court's authority to assess what process is due on a case-by-case basis is undisturbed by the language of § 3511(e)"); *see also Ass'n for Reduction of Violence v. Hall,* 734 F.2d 63, 68 (1st Cir.1984) (ordering redaction or summary of privileged materials if necessary); *Naji v. Nelson,* 113 F.R.D. 548, 553 (N.D.Ill. 1986) (requiring government to disclose non-classified portions of withheld documents). Moreover, in the context of intelligence gathering activities and national security, the use of *ex parte* and *in camera* submissions to review classified information may be the only way for a court to carry out its duty, as noted above, to conduct a searching review of the government's evidence offered in support of an NSL request or nondisclosure order.

Petitioner relies on the Ninth Circuit's decision in *American–Arab Anti–Discrimination Comm. v. Reno,* 70 F.3d 1045 (9th Cir.1995), which held that use of undisclosed national security information in summary adjustment-of-status legalization proceedings violated due process. However, in a subsequent decision, the Ninth Circuit questioned the continued validity of that holding. *See Al Haramain Islamic Found., Inc. v. United States Dep't of the Treasury,* 660 F.3d 1019 (9th Cir.2011), reprinted as amended at *Al Haramain Islamic Found., Inc. v. United States Dep't of the Treasury,* 686 F.3d 965, 981–82 (9th Cir.2012). The Court clarified that the holding in *American–Arab Anti–Discrimination Committee* was based on the content of the classified information, specifically the fact that the government had argued that the aliens threatened national security, but the classified information contained nothing about the aliens themselves. In *Al Haramain,* the Ninth Circuit held that "the use of classified information in the fight against terrorism," qualified as a sufficiently extraordinary circumstance to overcome any presumption against the use of classified information in deportation proceedings. *Id.,* at 982.[17] This Court finds that the use of classified information, submitted *in camera* for the Court's review of the necessity of a nondisclosure order or an NSL, is not unconstitutional but is instead a necessary mechanism for the Court to conduct the searching review of the government's national security justification required by the First Amendment.

**7. Remedy**

◼ Having concluded that the NSL provisions suffer from significant constitutional infirmities, the Court must determine the appropriate remedy. As an initial matter, the Court finds that it is not

---

17. The Ninth Circuit in *Al Haramain Islamic Found.* also found that to the extent practicable, the government should provide an unclassified summary of the information withheld to counsel or allow access to the classified information to defense counsel who have secured an appropriate level of security clearance, in order to minimize any due process concerns. *Id.* at 983. Here, the government provided an unclassified, redacted version of the classified declaration to Petitioner's counsel.

within its power to "conform" the NSL nondisclosure provisions, as did the Second Circuit. The statutory provisions at issue—as written, adopted and amended by Congress in the face of a constitutional challenge—are not susceptible to narrowing or conforming constructions to save their constitutionality.[18] The Second Circuit relied primarily on *United States v. Thirty–Seven (37) Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971) and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), but the narrow defects in the statutes under review in those cases bear little resemblance to the multiple constitutional inadequacies identified by the Court in the NSL nondisclosure provisions.

In *Thirty–Seven (37) Photographs*, the Supreme Court reviewed a statute authorizing customs agents to seize obscene materials. While the statute met most of the requirements of *Freedman*, its sole omission was the "failure to specify exact time limits within which resort to the courts must be had and judicial proceedings be completed." *Id.* at 371, 91 S.Ct. 1400. In construing the statute to require judicial review to be commenced within fourteen days and completed within sixty days, the Court relied on extensive congressional history recognizing that "prompt" judicial review of seizures must be provided. *Id.* at 371–72, 91 S.Ct. 1400. Here, however, there are *multiple* constitutional problems with the statute; indeed, despite the Second Circuit's attempt to conform the statute, the problems still resulted in the Second Circuit striking down the conclusive review provisions as unconstitutional.

*Compare United States v. Thirty–Seven (37) Photographs*, 402 U.S. 363 at 369, 91 S.Ct. 1400 (noting the "cardinal principle" of construing a statute to avoid its unconstitutionality does not govern cases where statutes "could not be construed so as to avoid all constitutional difficulties"); *with John Doe, Inc. v. Mukasey*, 549 F.3d at 884 (striking down "conclusive presumption" clauses of subsections 3511(b)(2) and (b)(3), while conforming remainder of statute). Moreover, there is no evidence before the Court that Congress was still concerned about constitutional deficiencies after it had taken steps to address some of the constitutional infirmities found by district courts in the Second Circuit. Rather, it appears that, in amending and reenacting the statute as it did, Congress was concerned with giving the government the broadest powers possible to issue NSL nondisclosure orders and preclude searching judicial review of the same.

In *Booker*, the Supreme Court struck down the judicial review provisions of the Sentencing Reform Act, which provided for *de novo* review of sentencing departures, and instead inferred "appropriate review standards from related statutory language, the structure of the statute, and the 'sound administration of justice.' " 543 U.S. at 260–61, 125 S.Ct. 738. Here, however, the sorts of multiple inferences required to save the provisions at issue are not only contrary to evidence of Congressional intent, but also contrary to the statutory language and structure of the statutory provisions actually enacted by Congress.

---

**18.** As noted above, after the prior version of the NSL statute, including the nondisclosure provision in 18 U.S.C. § 2709, was found unconstitutional by two district courts in the Second Circuit, Congress amended the provision and added the judicial review provisions in 18 U.S.C. § 3511. *See Doe v. Ashcroft (Doe I)*, 334 F.Supp.2d 471 (S.D.N.Y.2004); *Doe v.*

*Gonzales (Doe CT)*, 386 F.Supp.2d 66 (D.Conn.2005); see also *Doe I v. Gonzales*, 449 F.3d 415 (2d Cir.2006) (remanding *Doe I* for reconsideration in light of amendments to NSL nondisclosure provisions and dismissing *Doe CT* as moot in light of government's withdrawal of nondisclosure order).

The government does not directly address the Second Circuit's approach, other than approving the Second Circuit's result in a footnote. *See* Govt. Oppo. at 20–21 & fn. 10. Instead, the government asserts that this Court should rely on the "canon of constitutional avoidance." *See* Govt. Oppo. at 20, n.10 (relying on *Gonzales v. Carhart*, 550 U.S. 124, 153, 127 S.Ct. 1610, 167 L.Ed.2d 480 (2007) (canon of constitutional avoidance applies if a reasonable interpretation of statute can avoid constitutional infirmities)). Here, however, the Court cannot ignore express language in the statute in order to come up with "reasonable interpretations" that would be constitutional.

The government also relies on a line of cases where courts accepted limiting constructions offered by the government to avoid striking down content-neutral time, place and manner restrictions on speech. *See* Govt. Oppo. at 20–21, n.10 (citing *Cox v. New Hampshire*, 312 U.S. 569, 575, 61 S.Ct. 762, 85 L.Ed. 1049 (1941), *Stokes v. Madison*, 930 F.2d 1163, 1170 (7th Cir. 1991)). Again, those cases are inapposite to the situation here, where Congress has drafted a very specific statute aimed at preventing speech on a particular subject, and redrafted amendments to it to address identified constitutional deficiencies. In light of the language actually and intentionally used by Congress in amending the statute after it was initially struck down as unconstitutional by two different district courts in the Second Circuit, this Court finds there is no "reasonable construction" that can avoid the constitutional infirmities that have been identified.

■ The Court also finds that the unconstitutional nondisclosure provisions are not severable. There is ample evidence, in the manner in which the statutes were adopted and subsequently amended after their constitutionality was first rejected in *Doe v. Ashcroft*, 334 F.Supp.2d 471 (S.D.N.Y.2004) and *Doe v. Gonzales*, 386 F.Supp.2d 66 (D.Conn.2005), that Congress fully understood the issues at hand and the importance of the nondisclosure provisions. Moreover, it is hard to imagine how the substantive NSL provisions—which are important for national security purposes—could function if no recipient were required to abide by the nondisclosure provisions which have been issued in approximately 97% of the NSLs issued.

## 8. Petitioner's Challenge to the Statute As Applied

In light of the Court's conclusion that the NSL provisions suffer from significant constitutional defects which cannot be remedied in this forum, and the conclusion that the Court cannot sever the unconstitutional nondisclosure provisions from the substantive NSL provisions, the Court need not reach Petitioner's as-applied challenge to both the nondisclosure provision and the substantive request for information.

## CONCLUSION

For the reasons discussed above, the Court concludes that the nondisclosure provision of 18 U.S.C. § 2709(c) violates the First Amendment and 18 U.S.C. § 3511(b)(2) and (b)(3) violate the First Amendment and separation of powers principles. The Government is therefore enjoined from issuing NSLs under § 2709 or from enforcing the nondisclosure provision in this or any other case. However, given the significant constitutional and national security issues at stake, enforcement of the Court's judgment will be stayed pending appeal, or if no appeal is filed, for 90 days.

**IT IS SO ORDERED.**